## Chesapeake & Ohio Railway Company v. Hoskins' Administrator.

(Decided May 11, 1915.)

### Appeal from Carter Circuit Court.

1. Railroads—Personal Injuries—Negligence.—In an action to recover for personal injuries sustained by being struck by one of appellant's trains at a public crossing over its spur track, where the engine was backing down a steep grade, and decedent in going upon the track had to do so with his back to the engine, held there was evidence of appellant's negligence in failing to sound an alarm when the engine started some 800 feet away, and in failing to keep a watchman upon the tender or at the crossing to warn people of its approach.

2. Railroads—Negligence—Signals.—A warning that does not give the traveling public a reasonable opportunity to learn of the danger and avoid it is not a timely warning, and where no alarm was given until the engine was within 30 or 40 feet of decedent, and then sharp blasts of the whistle were sounded, it was not in time for him to act discreetly, and it was for the jury to say whether he was negligent in going upon the track under the circumstances and whether he negligently failed to get off the track after the alarm was sounded.

3. Railroads—Instructions—Evidence.—An instruction which required the jury to believe that those in charge of the engine used all the appliances at hand to stop the engine and avoid injuring decedent after they saw him upon or about to go upon the track was not prejudicial where the evidence showed that there was no possible way to stop the engine after they saw decedent, and that no more effective appliances could have been used than were used.

4. Railroads—Instructions—Evidence.—It was not error to refuse an instruction to the effect that if decedent's hearing was impaired that he should have stopped and looked to see whether a train was approaching before going upon the track where there was no evidence that his power to hear things was any less than that of the average man.

5. Damages—Impairment of Earning Power of Minister—Evidence.— One's salary as a minister is not conclusive evidence of his power to earn money, and where it is not claimed that the verdict is excessive, it was not prejudicial error for the court to refuse to admit the same, although it might properly have been admitted in connection with other facts for the jury's consideration in determining decedent's earning capacity.

SHELBY, NORTHCUTT & SHELBY, WILHOIT & WILHOIT and H. L. WOODS for appellants.

SCOTT & HAMILTON, ARMSTRONG & WOLFFORD, BROWN & CASSADY, H. R. DYSARD and J. P. HOBSON & SON for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

K. S. Hoskins, a minister, was run over and killed by appellant's freight engine at a railroad crossing in the town of Olive Hill, Carter County. This appeal is from a $9,000 verdict and judgment rendered in the lower court in favor of his administrator.

The accident occurred on the 19th of May, 1913, about half past one o'clock in the afternoon. He was killed on a spur track at a street or road crossing. This spur track is about 1,000 feet long and goes from the main line up to the Harbison & Walker brick plant. The grade is steep and there is a difference in elevation of 26 feet between the track at the brick plant and the point where the spur leaves the main line. The spur intersects the main line about 200 feet west of the street crossing. The station is still further west a short distance up the main line. The street does not seem to cross the main line. It is the only street leading from east to west in Olive Hill. The spur leaves the main track at an angle of about 30 degrees, and the street approaches the spur through this angle. Olive Hill is a town of 2,000 or 3,000 inhabitants, and the witnesses estimate that from 500 to 1,000 people use the street every day at the point in question. There is a walk on but one side of the street, and at the spur the walk changes sides.

After dinner Mr. Hoskins left his home, east of the spur, to meet an engagement with some persons in the main part of town, west of the spur. He traveled the sidewalk, and it, at the spur, takes the opposite side of the street—that is, one going with the sidewalk, and on reaching the spur, crosses the street by walking down the track until in line with the walk on that side

of the street. This spur is on a fill 6 to 10 feet high, and instead of the walk going by steps over the fill, the grade is reached gradually; that is, the walk is diagonal to the track. This spur is used only for the business of the brick plant, a clay bin, and a coal bin. Only one engine a day goes over it and it handles the empty and loaded freight cars. Some days the engine goes out one time and other days another time; that is, there is no regular schedule. At the time Mr. Hoskins started to town an engine was working with some cars up at the brick plant, and at the time of the accident it was backing to the main line; the tender in front, then the engine with six cars attached to it, two of them loaded; the hand-brakes set on two cars, but none of the air-brakes connected. There was no one riding on the tender or standing at the crossing to give warning or prevent people from attempting to cross. One brakeman was riding in the cars. Two other brakemen were members of this crew, but their whereabouts is not disclosed by the evidence. The speed of the train was five to eight miles an hour. The fireman did not see the crossing, for he was looking over the front of the engine back toward the brick plant. Owing to a curve in the spur, and the tender in front of him, the view of the engineer was obstructed. In coming up over the fill Mr. Hoskins necessarily walked with his back to the approaching train. When the engine left the brick plant seven or eight hundred feet away it gave no signal that it was about to start or cross the road. The trainmen say the bell was ringing all the time, and they are corroborated in this by some of the witnesses. Other witnesses say the bell was not ringing. Sharp blasts of the whistle were sounded as soon as the engineer saw him on the track. According to the engineer, he could only see under the body of the tender, and in that way discovered that some one was walking on the track about 30 or 40 feet in front. Other witnesses estimate the distance between Hoskins and the tender as all the way from 30 to 90 feet. There is no evidence that Hoskins saw or heard the train. All the evidence shows that after the engineer saw him everything that possibly could be done to stop the train and avoid the injury was done.

On reaching the track, Mr. Hoskins walked between the rails, his back to the engine, in order to get to the walk on the other side of the street.

Mrs. Kinnaird crossed just ahead of him. She saw the train coming and went over the crossing ahead of it. When she had gotten on the other side, she heard the quick blasts of the whistle, and looking back saw Mr. Hoskins. She says he continued walking down the track after the alarm signal was sounded, and she called to him frantically, but he paid no attention to her. As the engineer blew the whistle, he applied the brakes, and reversed his levers, and although the engine wheels were locked—that is, sliding on the rails—Hoskins was struck and knocked down by the tender, which passed over him, as did also part of the engine; and he received the injuries which, in a few hours, resulted in his death. At the last moment he must have tried to get off the track, as he was about the far rail when the tender hit him.

The petition charges negligence in the following respects: In operating the train; failure to equip the train with proper brakes; using a tender which was too high; failing to have some one upon the tender to warn persons of its approach; and failing to have a watchman or gate at the crossing.

Appellant insists that there was no proof of any negligence, and, therefore, the court erred in refusing to give a peremptory instruction to find for the defendant. In deciding this question, we may accept as correct appellant's contention that there was no evidence of negligence in the brake equipment of the train, or in switching cars with the air-brakes disconnected. Neither was there negligence shown in using a tender which was too high, nor were there any defective conditions about the crossing. But we are of opinion that there is proof to show negligence in the operation of the train, and in failing to have some one upon the engine or a watchman at the crossing to warn persons of the train.

From the evidence it seems to us that this was a dangerous crossing—much more so than if the crossing had been over the main line, for there trains were expected to pass frequently and on schedule. Their very infrequency on the spur tended to make it more dangerous, and the people using the crossing less careful, and imposed upon the railroad company greater duty as to warnings. Considering this in connection with the fill, grade, and curve, and the fact that one approaching the crossing, as did Mr. Hoskins, does so with his back to a train, coming as did this one, and that he has to

walk with his back to it the full width of the street in order to reach the sidewalk again, it would seem to impose upon appellant the duty either of having some one upon the tender or else a man to stand at the crossing in advance of the train. But appellant argues that a watchman could have done nothing more than was done by Mrs. Kinnaird. It is said that Hoskins had plenty of time to get off the track after the warning from Mrs. Kinnaird, and that a watchman could only have warned him. But we think a watchman at the crossing could have done more. He could keep him from going upon the track—much the safer plan—when a train is so near and coming down such a grade. A man on the tender could also have given earlier warning to the engineer, whose view was obstructed by the tender. Mrs. Kinnaird did not warn him until after the alarm whistle. A number of witnesses, including the engineer, say that the tender was within 30 or 40 feet of him when the whistle sounded. Claude Wells says that he was standing behind a house when the whistle blew; he immediately took the two or three steps necessary to bring him in view of the crossing; he says the wheels were locked or sliding on the rails, and that Mr. Hoskins was two or three feet in front of the tender. "He only made three steps from the time I saw him until the train hit him."

Considering the character of the crossing, the engineer should have sounded a warning from the whistle when the train left the plant. A warning that does not give the traveling public a reasonable opportunity to learn of the danger and avoid it is not a timely warning. The whistle blasts coming when the tender was so near served to confuse as well as warn. They were not given in time for him to act discreetly. It was for the jury to say whether he was negligent in going upon the track under the circumstances, and also whether, under the circumstances, after the whistle was sounded, he had time to get off of the track and was negligent in failing to do so. Instant action was necessary if he saved his life. To one in supposed peril instant action does not always mean acting with care and judgment.

"The rule is that, where a person has been placed in a position of peril by the negligence of another, he may recover for his injury although he may not, as shown by subsequent events, adopt the safest course, provided he uses such care and judgment as might be

fairly expected of a person of ordinary prudence under the circumstances." L. & N. v. Taylor, 104 S. W., 777, 31 Ky. Law Rep., 1142; L. & N. v. McNary, 128 Ky., 420; I. C. v. Hays, 128 S. W., 287; L. & N. v. Cook, 128 S. W., 83; C. & O. v. Dawson, 159 Ky., 300.

We are of opinion that the lower court properly refused a peremptory instruction.

The evidence of the engineer himself makes it plain that after he saw Hoskins there was no possible way to stop the train before it reached the place where Hoskins was walking, and his evidence in this regard is not contradicted. For that reason, we do not believe that the error complained of in instruction No. 3 was prejudicial. It told the jury:

"If they shall believe from the evidence that those in charge of the train saw the deceased, Hoskins, while upon or about to go upon the crossing, in time to have prevented injury to him, it was their duty to *use all of the appliances then at hand* to stop or check said train and avoid injury to him, &c."

It is true that there were appliances other than those used which the engineer might have used to stop or check the train, but there is no evidence to show that the others would have been any more effective. Those he did use reversed the steam and locked the wheels. No appliances could have done more than this. There is no evidence to show that those on the train saw Mr. Hoskins at any time before he went upon the track, or while he was upon the track until the whistle blew, but this was not in time to prevent injury to him by checking or stopping the train if he remained on the track. Under the facts of this case, we do not believe the language of the instructions was prejudicial or that the jury was misled into believing that the appellant was liable, even if they could have used other, but no more effectual, appliances.

Appellant complains that the court refused to give instruction B, which it offered, to the effect that, "if said Hoskins' hearing was defective, it was his duty to look to see whether a train was approaching before going upon said track."

There was some evidence that there was a slight deficiency in the hearing of one ear, but there was none that his sense of hearing was diminished—that is, there was nothing in the case to show that his power to hear

things was any less than that of the average man. We have repeatedly held that failure to stop and look or listen is not *per se* negligence. It is a question for the jury whether the traveler exercised ordinary care for his own safety. L. & N. v. Miller, 134 Ky., 716. The facts in the case at bar do not indicate that his sense of hearing was materially impaired or that he could not prudently rely upon it, and, therefore, there was no reason for departing from the general rule referred to. But the appellant should not complain for the court did instruct the jury: (No. 7.)

"The jury are instructed that it was the duty of the decedent, K. S. Hoskins, before going upon the railway track referred to in the evidence, to exercise his senses of sight and hearing to ascertain whether a train was approaching on said track; and that, if said crossing was a dangerous one, it was his duty to exercise increased care, commensurate with such danger."

The court permitted the administrator to testify over appellant's objection that his intestate had the ability and capacity to earn $2,500 per year, but refused to permit appellant to prove that, as a minister of the Gospel, he was drawing a salary of not exceeding $600 per year. It was competent to prove his earning power, and ability to make money, and the amount he was then making was relevant evidence on that question, but one's salary as a minister is not conclusive of the extent of his earnings. Marriage and other fees add materially to the salary of a minister. Had evidence of his salary been received, and it should have been, the jury would have considered that evidence, instead of being limited by it, in arriving at the amount which would reasonably compensate his estate for the destruction of his power to earn money. In other words, the error complained of only affected the amount of damages.

The decedent was 43 years of age; a man of varied talents and ability. He had been a school teacher, farmer, county school superintendent, a lawyer, and merchant, and at the time of his death was serving his first church. He earned $2,500 as a merchant the year before. There is no evidence that he was a failure in any of his callings or occupations, and appellant does not argue that the verdict is excessive. We do not believe the error of the court in rejecting this evidence as to his salary as a minister was prejudicial.

On the whole case, the judgment is affirmed.