## Hill, By et al. v. Poindexter, et al.

(Decided November 1, 1916.)

Appeal from Harrison Circuit Court.

Negligence—Hiring of Steam Roller—Injury to Third. Person— Liability of Owner.—Where the owner of a steam roller rents it to a city under a contract, by which the city is to pay a specified price per day and also the wages of the men in charge of it, together with the cost of the fuel and water, and the manner of doing the work is under the supervision of the city engineer, and the men in charge of the roller are subject only to his directions and control, the owner of the roller is not liable to a third party for the negligence of the men in charge of the roller while so engaged.

B. F. GRAZIANI and T. E. KING for appellant.

M. C. SWINFORD and C. M. JEWETT for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, William R. Hill, an infant seven years of age, suing by his next friend, Riley B. Hill, brought this suit against J. R. Poindexter, Harold Poindexter and the city of Cynthiana to recover damages for personal injuries. The city's demurrer to the petition was sustained. As to the defendant, J. R. Poindexter, a trial was had, which resulted in a verdict and judgment in his favor. From that judgment plaintiff appeals.

In March, 1913, the Board of Council of the city of Cynthiana passed a resolution providing for the reconstruction of Main street under the supervision of the city engineer. The committee, through its chairman, rented a steam roller from J. R. Poindexter, which was placed in charge of J. D. Coons as engineer and Obe Terry as fireman. A pony, which was being driven by plaintiff's mother, took fright and ran away. Plaintiff, who was in the pony-cart, was thrown out and severely injured. According to Mrs. Hill's testimony, she saw the roller when some distance away. It was moving in the same direction she was going. She followed behind the roller, thinking that when it reached the next street it would either continue on Main street or turn out of her way on Pleasant street. The roller, however,

was reversed and began to back towards her. When the machine was about sixty feet away the pony began to show evidence of fright and shied to the west side of the street and stopped. At that time the fireman, Terry, seemed to be looking directly at her. As the roller continued to approach the pony showed increased signs of fright and finally bolted and ran away. The evidence for defendant is to the effect that the pony never became frightened until it became even with, or it passed the roller. The roller was immediately brought to a standstill and it was then too late to stop the pony.

In its instructions to the jury the trial court assumed that Terry was the servant of J. R. Poindexter and authorized a recovery by plaintiff if the jury believed from the evidence that Terry knew, or by the exercise of ordinary care could have known, of the pony's fright in time to have stopped the roller and prevented the accident, and failed to use ordinary care to do so. The jury were also told that Coons was not the servant of Poindexter and that they could not find for plaintiff on account of his negligence, if any. It is insisted that a recovery should have been authorized, not only for the negligence of Terry, but also for the negligence of Coons, and that the instructions given by the court were, therefore erroneous. Clearly the case against Poindexter turns on whether or not Terry and Coons, the men in charge of the roller, were, at the time of the accident, Poindexter's servants or the servants of the city. The substance of the evidence on this point is as follows: Poindexter rented the roller to the city for $6.00 per day, the city to furnish fuel and water and to pay the men for running it. Prior to that time Terry had been in Poindexter's employ and had operated the roller for some time. Coons had not been in Poindexter's employ but was in the employ of a blacksmith. As he was a good engineer, it was suggested that he be engaged to take charge of the engine on that occasion. The work of reconstruction had been previously ordered by resolution of the General Council. The work was to be under the supervision of the city engineer. No plans or specifications were provided for the work. Terry and Coons brought the machine to Main street and reported to the city engineer. He told them what to do and how to do it. They were at all times subject to his directions and control.

In our opinion, the facts of this case bring it within the rule announced in Nason v. Kansas City, Ft. S. & M. R. Co., 22 U. S. App. 220, 9 C. C. A. 666, 61 Fed. Rep. 605, 24 L. R. A. 693. There a railroad company had rented to a bridge company its engine, engineer, and its fireman. While doing the business of the bridge company the plaintiff was injured through the negligence of the engineer. It was held that the railroad company, the owner of the engine, and the original employer of the engineer, was not liable for the injury. In reaching this conclusion the court, speaking through Judge Taft, said:

"On this state of facts we are clearly of the opinion that the court was right in holding that the railway company was not responsible for the acts of the engineer and fireman in running the engine which killed Nason. They were, it is true, general servants of the railway company, but at the time of the accident they were engaged in the work of the bridge company, were subject to the orders of the bridge company's officers, and in what they did or failed to do were acting for the bridge company. The question is one of agency. The result is determined by the answer to the further questions, whose work was the servant doing? and under whose control was he doing it? The railway company had simply lent its general servants to become special or particular servants of the bridge company, had for the time parted with control over them, and was not responsible for their acts while in the service and under the control of their temporary master."

Among the cases cited to sustain this view are the following: Donovan v. Laing, W. & D. Constr. Syndicate (1893), 1 Q. B. 629; Rourke v. White Moss Colliery Co., L. R. 2 C. P. Div. 205; Powell v. Virginia Constr. Co., 88 Tenn. 692; Miller v. Minnesota & N. W. R. Co., 76 Iowa 655. In the first case mentioned above the defendants contracted to lend to a firm, who were engaged in loading a ship at their wharf, a crane, with a man in charge of it. The man in charge received directions from the firm or their servants as to the working of the crane, and the defendants had no control in the matter. Plaintiff, who was a servant of the wharfingers, was struck by the crane and injured, by reason of the negligence of the man in charge of it, and sued the defendants on the ground that the negligence was the act of their servant. It was held that, though the man

in charge of the crane remained the general servant of the defendants, yet, as they had parted with the power of controlling him in the work in which he was engaged, they were not liable for his negligence while so employed. In delivering judgment Lord Esher said:

"In this case the crane and the man to work it were lent by the defendants to Jones & Co. for a consideration, and to be used in the manner I have described. For some purposes, no doubt, the man was the servant of the defendants. Probably, if he had let the crane get out of order by his neglect, and, in consequence, any one was injured thereby, the defendants might be liable; but the accident in this case did not happen from that cause, but from the manner of working the crane. The man was bound to work the crane according to the orders, and under the entire and absolute control, of Jones & Co. That being so, whose servant was the man in charge of the crane as to the working of it? It is true that the defendants selected the man and paid his wages, and these are circumstances which, if nothing else intervened, would be strong to show that he was the servant of the defendants. So, indeed, he was as to a great many things; but as to the working of the crane he was no longer their servant, but bound to work under the orders of Jones & Co.; and if they saw the man misconducting himself in working the crane, or disobeying their orders, they would have a right to discharge him from that employment. This conclusion hardly requires authority, but there is authority for it, without going back to an earlier date, in the case of Rourke v. White Moss Colliery Co., L. R. 2 C. P. Div. 205."

Judgments were also delivered by Lord Justices Lindley and Bowen, who followed the same line of reasoning. A different rule applies in what are known as "carriage cases." The reason for this distinction is pointed out by Lord Justice Bowen in Donovan v. Laing, W. & D. Constr. Syndicate, *supra,* in the following language:

"The principal part of the argument for the plaintiff was founded on what may be called the Carriage Cases—Laugher v. Pointer, and Quarman v. Burnett— but they really have nothing to do with the point presented in this appeal. If a man lets out a carriage on hire to another, he in no sense places the coachman under the control of the hirer, except that the latter may

indicate the destination to which he wishes to be driven. The coachman does not become the servant of the person he is driving, and if the coachman acts wrongfully, the hirer can only complain to the owner of the carriage. If the hirer actively interferes with the driving, and an injury occurs to any one, the hirer may be liable, not as the master, but as the procurer and cause of the wrongful act complained of. In the present case the defendants parted for a time with control over the work of the man in charge of the crane and their responsibility for his acts ceased for the time.''

In the case under consideration Poindexter did not contract to grade the street. He was not present and did not assume control of the work. He merely let the roller to the city under a contract by which the city, in addition to paying him $6.00 a day, agreed to pay the wages of the men in charge of the roller, together with the cost of fuel and water. The accident did not happen from any defect in the roller. It did not happen while the roller was being conveyed to the place of injury. It happened after the men had reported to the city engineer and were then subject only to his control and directions. Even though, in a general sense, Terry and Coons were the servants of Poindexter, he is not liable for their negligence occurring while they were engaged in the special service of the city and acting solely under its orders and direction. It follows that Poindexter was entitled to a peremptory instruction. Plaintiff was not prejudiced, therefore, by the trial court's refusal to authorize a recovery based on the negligence of Coons.

Judgment affirmed.