## Louisville & Nashville Railroad Company v. Locker's Administrators.

(Decided December 17, 1918.)

### Appeal from Franklin Circuit Court.

1. Railroads—Country Grade Crossings.—At a country grade crossing which is unusually dangerous by reason of obstructions to sight or hearing and whether lawful or not both the railroad company and the highway traveler must exercise care commensurate with the danger to avoid injury.

2. Railroads—Crossings—Instructions.—Instructions examined and held to impose upon both the company and the highway traveler the same degree of care with respect to an unusually dangerous crossing.

3. Railroads—Negligence—Personal Injuries—Recovery.—A person placed in a position of peril by the negligence of another may recover for his injury, although he may not, as shown by subsequent events, have adopted the safest course, provided he exercised such care and judgment as might fairly have been expected of a person of ordinary prudence under the circumstances.

4. Railroads—Negligence—Evidence.—Whether or not decedent was placed in sudden peril by the negligence of the defendant is a question for the jury where the evidence as to defendant's negligence in the operation of its train which struck and killed the decedent is contradictory.

5. Negligence—Contributory Negligence—Burden of Proof.—The burden is upon the defendant to prove contributory negligence, and where there is no evidence of such negligence except such inferences as can be drawn from the circumstances and such inferences are not conclusive the question is for the jury.

6. Railroads—Crossings—Negligence.—At ordinary grade crossings in the country no rate of speed, generally, is negligence, but where the crossing is unusually dangerous the rate of speed may be a material question in determining whether or not a railroad company has exercised ordinary care commensurate with the danger.

7. Appeal and Error—Verdict.—A verdict of $10,000.00 for the destruction of the earning capacity of a young man thirty-two years of age, who was earning at the time of his death one dollar and a half a day, held not to be so large as to justify a reversal.

GUY H. BRIGGS and BENJAMIN D. WARFIELD for appellant.

SCOTT & HAMILTON and L. W. MORRIS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from the judgment of the Franklin circuit court, rendered on a verdict for $10,000.00 damages for the death of John Locker, who was struck by defendant's passenger train while driving a team of mules across a public crossing in the country.

The petition alleges negligence in the operation of the train; that the crossing was an unusually dangerous one and that the defendant was negligent in failing to provide additional safeguards for the protection of the public rendered necessary because of its unusually dangerous character.

The answer, in addition to traversing all material averments of negligence also denied the crossing was unusually dangerous and pleaded contributory negligence, which plea was traversed of record.

1. The first complaint is that the court erred in submitting to the jury the issue as to the dangerous charac-

ter of the crossing and the basis of this objection is the erroneous assumption that only where a public crossing is habitually used by a large number of persons is it incumbent upon the railroad company to take any precaution for the safety of travelers other than the whistle and bell signals from the engine.

The company is required by statute to give signals from the engine as its trains approach all public crossings and such signals are usually sufficient to warn the highway traveler of the train's approach and besides a lookout are the only precautions demanded of the company in the exercise of ordinary care, but it has long been the rule in this state and others that where a crossing is unusually dangerous because of obstructions to sight or hearing which render the statutory precautions insufficient to give reasonable warning of the train's approach the exercise of ordinary care demands of the company that other precautions commensurate with the danger shall be taken to avoid injury to members of the public using or about to use the crossing and because of the reciprocal duties growing out of the complementary rights of the company and the public in the crossing, the highway traveler in the exercise of ordinary care for his own safety must also exercise care commensurate with the danger. Both parties are required to exercise ordinary care and where the danger is unusual ordinary care demands of both increased care commensurate with the danger, and this rule applies alike to the company and the traveler, regardless of whether the obstruction to sight or hearing is a natural obstruction or has been placed or allowed to remain by the company upon its right-of-way, in the lawful exercise of its franchise rights. But this court has been prompt to hold and has always held that where the obstruction was due to the natural topography of the land or was placed upon the company's right-of-way in the lawful exercise of its franchise rights, the existence of the obstruction was not negligence and for its existence the company was not blameworthy, but where the obstruction was not placed upon the right-of-way in the lawful exercise of the company's franchise rights or is allowed to remain there an unreasonable length of time the presence of the obstruction may amount to negligence for which the company might be held responsible if the obstruction is the proximate cause of injury to a highway traveler. These distinc-

tions have been observed by the court and must, of course, be observed in applying what was said in any case upon the trial of another. For illustration, in the case of L. & N. R. R. Co. v. Breeden's Admrx. 111 Ky. 729, instructions were condemned which permitted a recovery because of an obstruction to the view resulting from a cut due to the natural conformation of the land for which the company was not blameworthy because the making of the cut was the exercise of lawful franchise right; but it was pointed out in that case and a retrial directed in conformance with the principles above stated, that because of the unusually dangerous character of the crossing known to both parties, both parties, in the exercise of ordinary care under such circumstances, must exercise increased care commensurate with the unusual danger; so, also in the case of L. & N. R. R. Co. v. Lucas, Admr. 30 Ky. L. R. 359, both parties were required to exercise care commensurate with the unusual danger at a crossing in the country, although the obstructions upon the company's right-of-way that made the crossing unusually dangerous were the depot, cattle-pens and chute constructed by the company in the exercise of its franchise rights and for which it was not blameworthy. In the case of L. & N. R. R. Co. v. Park's Admr., 154 Ky. 269, although the crossing was in the country remote from any village or thickly settled community and not shown to have been a much frequented one this court, upon evidence that the view at the crossing was obstructed by weeds, bushes and briers which had grown up and been permitted by the company to remain for an unreasonable length of time upon its right-of-way, held that it was proper to submit to the jury the question as to whether or not it was an unusually dangerous crossing. In a recent case of the L. & N. R. R. Co. v. Treanor's Admr., 179 Ky. 350, it was held proper to submit to the jury the question of the unusually dangerous character of a country grade crossing resulting from an obstruction which the company had negligently constructed upon its right-of-way so as to interfere with the view at the crossing. Many other cases illustrative of the rule under varying circumstances might be cited, but these are, we think, sufficient for the present purpose and we have not referred to cases where the crossing was in a city or at a place habitually used by a large number of persons be-

cause those cases are not applicable here, as the case was not tried or submitted to the jury, although such allegations were contained in the petition, upon the theory that the company was under the duty at this crossing to provide a watchman, gates or other device to safeguard the traveling public.

It is, therefore, apparent that there is no merit in the contention that the court erred in submitting to the jury the issue as to the dangerous character of the crossing because it was shown in the evidence that the crossing was an unusually dangerous one because of a cattle-chute lawfully constructed by the company upon its right-of-way, but so as to obstruct sight of the train's approach, after passing through a cut and around a curve. In this connection we think we should call attention to the fact that the evidence with respect to the freight cars on the sidetrack was not competent and if objected to would have been excluded since they were not shown to have been there habitually or for any length of time and cars standing upon a sidetrack, unless left there habitually or for an unreasonable length of time, will not impose upon the railroad company unusual precautions in operating its trains over a country crossing, the view of which is temporarily obstructed by the freight cars on the sidetrack.

2. The next objection is that the court did not correctly submit the question as to the dangerous character of the crossing in either instruction No. 1, which authorized a recovery for the plaintiff, or in instruction No. 4, upon contributory negligence, in that a higher degree of care was imposed upon defendant than upon decedent with respect to the extraordinary hazard resulting from the unusually dangerous character of the crossing.

Instruction No. 1 is almost a *verbatim* copy of the instruction given in the Lucas case *supra*, covering almost exactly similar facts, and as that instruction was approved by the court and the reasons given therefor it will not be necessary for us to repeat them here. The same is true with respect to the instruction upon contributory negligence, but in deference to counsel's earnest insistence that instruction No. 1 placed upon the defendant a higher degree of care than was, by instruction No. 4, placed upon decedent we shall attempt briefly to show that this is not so.

Instruction No. 1, after stating the defendant's duty of giving signals from the engine, told the jury that "If they believed from the evidence that this crossing, because of its location and surroundings at the time of the accident, was unusually dangerous to travelers and that the statutory signals were not sufficient to give reasonable notice of the approach of the train and that fact was known by the defendant, or by the exercise of ordinary care could have been known by it, then it was the duty of its servants in charge of the train to use such other means to prevent injury to travelers at said crossing, as in the exercise of a reasonable judgment, might be considered necessary by an ordinarily prudent person operating a train." It will thus be seen that this instruction imposed upon the defendant the duty, if the crossing was an unusually dangerous one, of using, in addition to statutory signals, such other means to prevent injury to the highway traveler as in the exercise of a reasonable judgment might be considered necessary by ordinarily prudent persons operating a train; and this, of course, is only ordinary care applied to the unusually dangerous conditions.

Instruction No. 4 required of the decedent if the crossing was unusually dangerous and he knew or could have known by the exercise of ordinary care that the crossing was dangerous on account of its location and obstructions, if any, and if "said Locker failed to exercise this degree of care . . . and failed to take such care for his own safety as an ordinarily prudent man would have taken and on account of his negligence and carelessness in these respects, if any, his death resulted or occurred and would not have occurred except for such negligence and carelessness, if any, upon his part then you will find for the defendant." This instruction, it will be observed, also placed upon the defendant the duty of exercising ordinary care, having regard for the dangerous condition of the crossing, and both instructions did, in fact, place upon both parties the same duty of exercising ordinary care with respect to the same extraordinary or unusual conditions. It is true the two instructions are not couched in exactly the same language and do not, in terms, say that the parties shall exercise care commensurate with the danger, as would no doubt have been better and as was done in the instructions

given in the Treanor case, *supra,* but the difference is in form and not substance and if technically error was neither substantial nor prejudicial. It may also be well here to call attention to the fact that the same obligation was placed upon both the plaintiff and defendant of exercising increased care because of the increased hazard, if any, resulting from the presence of the freight cars upon the sidetrack as in both instructions all obstructions shown in the evidence were referred to and included in general terms, but since the same burden was placed upon both parties with reference to all obstructions at this crossing, including the freight cars on the sidetrack, the evidence with reference to the freight cars on the sidetrack as an obstruction was no more prejudicial to one party than the other.

3. It was shown in the evidence for the defendant that when decedent's attention was drawn by persons near the crossing to the dangerous proximity of the train he became confused and first attempted to stop the mules and back off the track and then began whipping them in an effort to get across the track, and upon this evidence the court instructed the jury on the sudden peril doctrine and of this the defendant complains. Defendant's purpose in introducing this evidence could only have been to prove to the jury that the decedent's death was caused by his own negligence in first attempting to stop his team and back off the track and then changing his mind and attempting to whip the team up and across the track. That this is so is shown by the fact it is argued here on behalf of defendant that this evidence shows conclusively that the decedent's death was caused solely by his own negligence in failing to go on across the track without attempting to back off when his attention was called to the approach of the train. It is problematical whether or not the decedent could have gotten safely across the track after being made aware of the train's approach and of his imminent danger had he at once recognized the best means of escape, but however that may be it is certainly clear that his peril was so great and so imminent that instant action was necessary to save his life and that he only had a bare chance to save it had he pursued that course, which, after deliberation, appears to us would have been wisest. It is the universal rule, so far as we are informed, that "where a person has

been placed in a position of peril by the negligence of another he may recover for his injury, although he may not, as shown by subsequent facts, adopt the safest course, provided he shows such care and judgment as might be fairly expected of a person of ordinary prudence under the circumstances.'' See C. & O. Ry. Co. v. Hockins' Admr., 164 Ky. 575, and the many cases there cited; and M. & B. S. R. R. Co. v. McCabe's Admr., 30 Ky. L. R. 1009.

It was a question for the jury upon the evidence in this case, as we shall directly show, whether or not the deceased was placed in his position of peril by the negligence of the defendant and hence it was proper to submit to the jury also the question of sudden peril for their guidance should they determine from the evidence that decedent's sudden peril resulted from the negligence of the defendant.

4. Fifteen or sixteen witnesses testified for the plaintiff in effect that no signal was given of the train's approach to the crossing. Some of these witnesses testified positively that no such signal was given, while others testified that they heard no such signal, although in a position to have heard same if it had been given. For the defendant some eleven or twelve witnesses testified the signals were given. So that, clearly, the case should have gone to the jury upon the question of whether or not decedent's peril and his death were the result of the defendant's negligence unless it was so clearly proven that all reasonable men must have agreed that the accident would not have happened except for the contributory negligence of decedent.

5. It is argued by counsel for the defendant that contributory negligence upon the part of the deceased was so proven (first) by proof of his failure to either jump from the wagon or drive on across the track without hesitation when he discovered the train's approach, but this contention has already been disposed of in discussing the sudden peril instruction; and (second) that because decedent had a stocking-cap pulled down over his ears, which robbed him of the sense of hearing, he was guilty of contributory negligence in failing to look carefully in the direction in which he knew a train was due to approach the crossing before attempting to cross it himself. In the first place, it is not proven whether decedent did or

not look carefully or at all in both or either direction be
fore attempting to cross the track or that he was robbed
of his sense of hearing by the cap he wore to such an ex-
tent that he could not have heard the train's signals had
they been given, although one witness does state that
wearing a similar cap he did not hear any signals and that
in his opinion if the signals were given he and the deced-
ent did not hear them because their caps came over their
ears, but this evidence, clearly, was not sufficient to prove
that the decedent was guilty of contributory negligence
as a matter of law, but was simply a circumstance to be
considered by the jury in determining whether or not
under all the circumstances the decedent failed to exer-
cise such care for his own safety as an ordinarily pru-
dent man would have exercised under similar circum-
stances.

Under this head counsel for defendant call our
attention to the fact that no witness testified that the
decedent took any precautions whatever for his own
safety as he approached and went upon the railroad
crossing; that there is no testimony that he stopped or
looked or listened.  This is true, but counsel overlook
the fact that the burden of proving contributory negli-
gence was on the defendant and there is no evidence that
the decedent did not look and listen and the only evidence
of contributory negligence upon his part is furnished by
such inferences as are deducible from proven conditions
and circumstances and these certainly are not of the char-
acter as to prove conclusively or to the satisfaction of
all reasonable minds that the decedent was negligent,
although sufficient to necessitate a submission to the jury,
as was done, the question of contributory negligence.
Stewart's Admr v. N, C. & St. L. Ry. Co., 146 Ky. 127.

6.   This court has repeatedly held that no rate of
speed at country crossings, generally, is negligence.  L.
& N. v. Molloy's Admr., 122 Ky. 219; Same v. Cummins'
Admr., 111 Ky. 333; Parkinson v. L. & N., 25 Ky. L. R.
2260. Upon authority of these cases and others counsel
for defendant insist that it was error to permit opposing
counsel in the examination of witnesses to inquire of the
speed of the train and the distance in which it could have
been stopped, and such evidence clearly is incompetent
upon the trial of a case involving an accident at a rural
crossing which is not unusually dangerous, but at a cross-
ing which is unusually dangerous and at which the statu-

tory signals are not sufficient in the exercise of ordinary care for the safety and protection of the traveling public and where no safety devices have been provided at the crossing the speed of the train may become and often is a material question in determining whether or not the company has taken precautions commensurate with the danger, and we do not think the evidence of the speed of the train was incompetent under the facts in this case. In the Treanor case, *supra,* this court cited with approval from C. N. O. & T. P. Ry. Co. v. Champ, 31 Ky. L. R. 1054, the following, which is applicable to the point under discussion, as well as to others already discussed:

"In the numerous cases involving crossing accidents that have come before this court, the central idea in all of them is that the company must use such care and precautions for the safety of travelers as the character of the crossing makes reasonably necessary for their safety and protection. What this degree of care is, must depend upon the facts of each case, and is a question for the jury. At one crossing, ringing the bell and sounding the whistle might be amply sufficient; at another, it would be wholly inadequate, and a flagman or other safety device would be necessary. This does not necessarily mean that the speed of trains must be slackened, as no rate of speed at ordinary crossings is usually negligence, but at exceptionally dangerous crossings, if the company does not choose to have a flagman or other safety device, and the statutory signals are not sufficient, the speed of the train must be so regulated as not to unnecessarily imperil the safety of persons using the highway. The duty of observing such degree of care as the situation and surroundings of the crossings may reasonably demand to prevent accidents is not alone imposed on the company, but applies as well to the traveler, who must use such care as might usually be expected of an ordinarily prudent person, to learn of the approach of the train and keep out of its way. In short, the obligations to avoid injury and accident are reciprocal and must be commensurate with the danger."

7. The last insistence which we shall notice is that the verdict is excessive.

The decedent was, at the time of his death, thirty-two years of age; was earning, at the time, one dollar and a half per day; had been married and divorced, and was

living with his parents and a married sister and was a good worker and "took a drink once in a while."

The verdict, while large, is not, in our judgment, so excessive as to strike the conscience at first blush as having been the result of prejudice or passion upon the part of the jury, and as said in the case of C. St. L. & N. O. R. R. Co. v. Benedict's Admr., 154 Ky. 675: "We cannot assume that a young man's earning power will always remain the same. Calculations, therefore, based on his earning capacity at the time of his death are by no means conclusive. His earning capacity may increase, and frequently does. The test is: What sum will compensate his estate for the destruction of his power to earn money? In each case this is a question for the jury, with the settled policy on the part of the court not to interfere with its verdict unless the sum be so large as to strike us at first blush as being the result of prejudice or passion."

In that case a verdict of $12,500.00 for the death of a young man twenty-five years of age, who was able to earn, when he was at work, from one dollar to a dollar and a half a day, was held not to be excessive and we are not willing to say that a verdict for $10,000.00 for the destruction of the earning power of a young man thirty-two years of age, who was earning, at the time of his death, one dollar and a half a day, and capable of earning more, was excessive.

Wherefore, the judgment is affirmed.