## Lewis v. Louisville Railway Company.

(Decided June 10, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1.  Trial—If there is Any Evidence the Question is for Jury.—If there is any evidence of facts in issue, question is for jury.

2.  Master and Servant—Street Railway Held Liable to Strike Breaker Injured by Motorman Operating Car.—A street railway held liable for injury to a strike breaker caused by negligence of motorman giving instructions as to how to operate a car, as against contention that injured party and motorman were employees of company furnishing strike breakers; operation of car being a part of railroad's business.

3.  Master and Servant—Motorman Instructing Strike Breaker Not Fellow Servant.—A motorman instructing strike breaker how to operate a street car was not fellow servant of one of strike breakers acting under his directions and in his presence.

4.  Master and Servant—Whether Motorman Exercised Ordinary Care Held for Jury.—In action against street railway company for injuries received by strike breaker, injured while on fender of a street car on which motorman was giving lessons how to operate a car, whether ordinary care was exercised after plaintiff's peril was discovered held for jury.

5.  Negligence—Contributory Negligence of One in Peril for Jury.—Contributory negligence is generally question for jury, especially where plaintiff is placed suddenly in peril and fails in emergency to take safest course.

6.  Master and Servant—Contributory Negligence of Servant in Peril Held for Jury.—In action for injuries to strike breaker, suddenly placed in peril while on fender of a street car which started during instruction of others as to how to operate cars, contributory negligence held for jury.

R. L. PAGE and W. W. DAVIES for appellant.

JOHN G. HEYBURN, HOWARD B. LEE and PETER LEE, TABB & KRIEGER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

In August, 1919, there was a strike of the employes of the Louisville Railway Company and the president of

the company 'phoned to Reed & Company in Chicago to
send him two or three hundred men to operate the street
cars in Louisville during the strike. Reed & Company
gathered up two or three hundred men, put them on the
train and had them in Louisville in about twenty-four
hours. Some of them were competent to operate cars;
many were not and did not know for what they were to be
used. Among the latter was the plaintiff, Joseph Lewis.
They reached Louisville on Saturday morning and Lewis
with certain others was sent out to the barn on Broad-
way. As many of these men had never operated street
cars it was necessary to instruct them in their operation
before sending them out on a car. The company, from
the main office, would 'phone to the barn when and where
a car was to be sent out and then the man at the barn
would designate some one to take out the car. To have
the men prepared to take out a car a man, called Murphy,
at this barn was directed to instruct those needing in-
struction and to this end he was on a car with six or eight
men moving it around and showing the men how to oper-
ate it on Sunday evening. Murphy was an experienced
motorman and was placed in this work by those in author-
ity at the barn. Lewis was walking along by the side of
the track when the car, on which Murphy and the men
were, stopped opposite to him and Murphy requested
Lewis to see if the headlight was burning. Lewis looked
and told Murphy the headlight was not burning. Murphy
then called to Lewis to see whether the bulb inside was
screwed in right in the headlight. Lewis then stepped on
the front fender and started to open the headlight. While
he was doing this and with his back to the front, the car
was started up, and before it could be stopped collided
with another car, catching Lewis between the two, break-
ing both his legs and inflicting so severe a shock that he
is unable to tell what happened from loss of memory
consequent upon the shock. Murphy was at the front of
the car, but one of the men he was instructing started it
up, the brakes failed to work and the man who had the
wheel did not know how to reverse, or at least did not re-
verse, and this brought about the collision. The failure
of the brakes to work was due to the fact that this man
had failed to turn on the air when he had turned it off
at the last stop, and being inexperienced he did not know
that he had to do this. When they saw that a collision
was inevitable they hollered at Lewis, and when the car
was within about five feet of the other car he turned
around and stood there as if paralyzed until the collision

occurred. Lewis was a gasfitter by trade; he had never worked on a car or had anything to do with street cars and understood that he was employed to act as guard when he came to Louisville. He brought this suit against the railway company to recover for his injury, and at the conclusion of the evidence for him which showed these facts, the circuit court peremptorily instructed the jury to find for the defendant. He appeals.

It is earnestly argued that Murphy and Lewis and all the other men who came down from Chicago were employes of Reed & Co. and not of the railway company. But Murphy was on one of the railway company's cars operating it to instruct the men on it with him how to operate a car so that they could take out a car from the barn when called for. The operation of this car was no less a part of the defendant's business than the operation of the cars on the street. Murphy was operating this car, in its service and for its benefit; for only in this way could the operation of the cars in the city be maintained. Murphy in operating this car was in the service of the defendant, and if there was negligence on his part the defendant is liable. The proof is clear that the car was standing still when Lewis got on and that Murphy could see him there when it was started up. He knew the danger to him from starting the car, because the other car was not very far ahead. He knew the danger to him when the brakes didn't work and he knew that the air should have been turned on when the car stopped, and if he had been watching what was going on he would have known that it had not been turned on. At least there was evidence tending to show these facts, and the rule is that if there is any evidence the question is for the jury.

Lewis was not the fellow servant of the man who was operating the car. This man was acting under the directions of Murphy in his presence. Murphy was in control of the car. Lewis was not a fellow servant of Murphy. He was not operating the car and had no part in its operation. After he got on the front of the car with his face to the rear, the danger to him from moving the car against the car in front of it was apparent to those starting it. His danger being known, it was a question for the jury if ordinary care for his safety was exercised after his peril was discovered.

"But when the servant is injured by employes of the same master, who are not directly associated with him and with whom he is not immediately employed,

and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he cannot protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds." Louisville & N. R. R. Co. v. Brown, 127 Ky. 742.

It is also earnestly insisted that Lewis cannot recover because he failed to use ordinary care for his own safety. The proof is clear that the men on the car and some men on the ground were hollering at him and that he turned around and saw the other car when he was five feet from it and failed then to jump off, but on the contrary stood there like a man dazed or paralyzed. The general rule is that contributory negligence is a question for the jury, especially in cases where the plaintiff is placed suddenly in peril and fails in the emergency to take the safest course. This rule is peculiarly applicable to persons without experience who are suddenly placed in great peril and are more liable to become excited and lose their presence of mind than those who have had experience in such situations. In this case these men had come down from Chicago, traveling all night; Lewis had slept little, either that night or Saturday night; was in strange surroundings and at work that he knew nothing about.

"Appellee, who was inexperienced, did not understand or appreciate the danger that might attend the work if done according to the dangerous method. He had a right to believe that Rawlinson, who was in charge, was both competent and careful. He had a right, under the circumstances, to rely on his judgment, and was not required by the exigencies of the occasion to put up his opinion against that of the foreman." L. & N. R. R. Co. v. Cox, 145 Ky. 722.

"The opportunity to think and act must be taken into consideration. And although he may not have taken the safest course or acted with the best judgment or greatest prudence, he may yet recover for injuries sustained if he can show that he was required to act suddenly or in an emergency, without opportunity for deliberation." 20 R. C. L. 134.

"There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances. And whether the plaintiff exercised such care is for the jury's determination." 20 R. C. L. 135.

This rule was followed by this court in I. C. R. Co. v. Wilkins, 149 Ky. 35; C. & O. R. Co. v. Hoskins, 164 Ky. 575, and L. & N. R. Co. v. Locker, 182 Ky. 578.

Some men do not think as fast as others. Some are dazed while others are more alert in sudden peril than usually. All must use ordinary care, but what the exercise of ordinary care should induce the person placed in sudden peril to do depends on the condition of the person and the circumstances surrounding him. So it is usually a question for the jury.

Judgment reversed and cause remanded for a new trial.