## Archer v. Bourne.

(Decided December 9, 1927.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1.  Negligence.—Though injuries result from negligence of defendant
    or of person for whom he is responsible, no recovery can be had
    therefor if plaintiff's own negligence contributed to injury.
2.  Negligence.—Woman, who, with party of other people, got into
    taxi late at night at invitation of stranger known to have liquor,
    was guilty of contributory negligence as matter of law, barring
    recovery against stranger for injuries, in failing to insist on get-
    ting out of car when stranger gave driver liquor, resulting in
    driver's loss of control of machine, notwithstanding plaintiff made
    protests.

HUBBARD & HUBBARD for appellant.

O'NEAL & O'NEAL and FRED FORCHT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The appellant, Sophia Archer, has appealed from a
judgment dismissing an action whereby she sought to
recover of J. C. Bourne $39,711.75 for personal injuries
and resulting expenses. On Saturday, December 6, 1924,
a party of 15 men and women went from Louisville, Ky.,
to West Baden, Ind., expecting to spend the night there
and to return to Louisville Sunday afternoon. They
reached West Baden about 7 o'clock and stopped at the
Homestead Hotel, where they had dinner. After dinner
the party went to Brown's Casino, in French Lick. The
testimony is that this is a gambling resort, conducted
something on the order of Monte Carlo. At that place,
Mr. J. C. Bourne introduced himself to some members of
the party, was introduced to the others, and appar-
ently took charge of the party. About 11 o'clock Brown's
Casino was arranging to close for the night, whereupon
Bourne asked the party to go with him to the Gorge Inn,
which was about 5 miles out in the country, and was a
place similar to Brown's Casino. They went, and after
they had been there awhile and had watched some of the
games, a waiter came in and announced that supper was
served. Whereupon Mr. J. C. Bourne told the party that

he had this supper prepared, and they were to be his guests. They then retired to the dining room and ate this supper. They lingered awhile after supper, then drove back to West Baden and put up their machines, Mr. Bourne accompanying them.

When they got to the Homestead Hotel, most of the party retired, but Mr. Bourne, Mrs. Archer, Mrs. Procter, and Prof. Kitner concluded to play cards for awhile. Bourne had a bottle of whisky in the room where they were playing cards. The night was hot and sultry, and, after they had played cards for awhile, they concluded to take a walk. It was then after 2 o'clock. After they got a short distance from the hotel, it began to rain. Mr. Bourne hailed a taxi, which was a Nash seven-passenger sedan, and bargained with the driver to pay him $4 to take them for an hour's ride. There were two young men in the taxi with the driver, and he asked the party if they would object to his taking those young men home. They told him they would not. Thereupon these young men got on the front seat with the driver. Mrs. Archer was seated on the left rear seat, Mr. Bourne was on the right rear seat. There were two auxiliary seats in the car, and Mrs. Procter occupied the one on the left just behind the driver, and Prof. Kitner the one on the right. They first drove to French Lick, where these two young men got out of the car. When they got out, one of them produced a quart bottle of whisky, and passed it around. Mr. Bourne took a drink, and the driver took one, but the rest of the party declined, and objected to either Mr. Bourne or the driver drinking. The testimony for the plaintiff is that at that time there was nothing to show that either the driver or Mr. Bourne was under the influence of whisky, other than the one drink just taken. They then turned around and drove from French Lick through West Baden, past the Homestead Hotel, and out on the road toward Paoli. After the party had got out into the country possibly 3 or 4 miles, Mr. Bourne produced a pint bottle of whisky, and invited the party to have a drink. Prof. Kitner and the two ladies declined, but Bourne took a drink and gave the driver a drink. The rest of the party became uneasy and asked the driver to take them back, but Mr. Bourne objected and assured the parties that he knew the driver and he was all right, and that they should go ahead. The driver obeyed Mr. Bourne and disregarded what the other members of the party said

to him. At Mr. Bourne's request the driver undertook to sing a song. When they had gotten about 7 miles from West Baden, the driver seemed to slump down in his seat and the machine began to go to the left side of the road. Some of the parties called to the driver, but he paid no attention, and, before anything could be done, the machine left the roadway and turned over. Mrs. Archer's left arm was broken in five places, she was severely cut by the glass, and she made a slow, painful, and only partial recovery. Her left arm is stiff. She is unable to follow her former vocation, that of a mannequin, nor is she able to play the violin nor paint, two accomplishments from which she had derived much pleasure, and could possibly have derived profit. The driver went to a farmer's house, and he brought a team and wagon and pulled the machine out of the ditch. The driver, Crowder, rode with the farmer from his house to the scene of the accident. This farmer said that the driver's breath smelled of whisky, and the driver supported himself in the wagon by holding to the farmer and his grandsons. These two boys were introduced, and they testified that this driver's breath smelled of whisky and he was staggering.

This automobile belonged to Fred Gass, a man engaged in the taxi business. The plaintiff, however, instituted her action against Mr. Bourne, her theory being that Mr. Bourne, having taken charge of the party, having employed the taxi, having given all of the directions to the driver, having supplied the driver with whisky, having made him drunk, and having acquired complete control over him, so that the driver paid no attention to the other members of the party or their requests, but obeyed Mr. Bourne entirely, is therefore responsible for the driver's actions and for the resulting injury to Mrs. Archer. She insists that the driver was, for the time, the servant of Mr. Bourne. In West's Digest, under the heading "Master and Servant," key-number 301 (4), a vast number of cases can be found which are by no means in perfect harmony, but from some of which Mrs. Archer might obtain comfort, as well as from these cases of ours: Lewis v. Louisville Ry. Co., 203 Ky. 655, 262 S. W. 1095; Hill v Poindexter, 171 Ky. 847, 188 S. W. 851, L. R. A. 1917B, 699. The text in 18 R. C. L., p. 815, section 268, as well as the text of 39 C. J. 1274, sections 1462-1465, might support her, provided the proof showed that

Bourne controlled the movements of the machine and the acts of the driver.

Conceding, but not deciding, that the law and evidence support Mrs. Archer in these contentions, still she cannot recover if her injuries resulted from her own contributory negligence. On this point the trial court directed a verdict for the defendant and that action we approve.

To start with, this was a rather wild party. Mrs. Archer realized that, and took the number of the taxi before she got in it. Women accustomed to the use of ordinary care and prudence do not start out after 2 o'clock on a dark, rainy night in a taxi with a stranger, whom they know to have liquor, when the driver and the stranger who employed the driver are both known to be drinking; they would not remain in such a taxi with men that continued to drink, and if they had started on such a wild party, would have gotten out at the time and place the first drink was taken, or at least they would have gotten out when they passed their hotel. Certainly, they would have gotten out when the second drink was taken. Now, it may be urged that this taxi was moving and that these people could not get out of a moving taxi, but they made no effort to do so or to have it stop. Neither Mrs. Archer nor her companion said anything to the driver about letting them out. It is true that Mrs. Archer did suggest to Prof. Kitner that he have the driver turn around, and Kitner asked him to do so, but Bourne objected, her protests ceased, and the driver went on. Mrs. Archer does not claim that she made any protest at the time the first drink was taken. When the second drink was taken, she said, "We objected," and that she asked to be taken back to the hotel. This request was directed to Mr. Bourne, not to the driver. She claims to have asked Mr. Bourne twice to take her back, but does not claim once to have said anything to the driver. Her protests impress one as half-hearted; they show she saw the danger, that she knew that care and prudence suggested she should not continue, still, perhaps out of her desire to make a show of bravery and fortitude, she continued. Aristotle is praised for naming fortitude as the first of the virtues, but he might with propriety have placed prudence before it, since without prudence fortitude is madness. Prudence warned her, but she did not

heed. She sensed the danger, yet she dared it, and while one must pity her in her present plight, still there is no escape from the conclusion that she voluntarily took the risk.

The judgment is affirmed.