**CITY OF LOUISVILLE and William J. Mooney, Appellants,**

v.

**Richard M. MARESZ, Interez, Inc., and Zurich–American Insurance Group, Appellees.**

**No. 90–CA–002134–MR.**

Court of Appeals of Kentucky.

July 10, 1992.

Jerald R. Steinberg, Winston E. King, Louisville, for appellants.

J. Michael Smither, Michael J. Darnell, John W. Phillips, Louisville, for appellees.

Before EMBERTON, JOHNSON and WILHOIT, JJ.

JOHNSON, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court entered August 29, 1990, that gave effect to a jury verdict dated August 24, 1990, finding appellant, William J. Mooney, to be 95% at fault and appellee, Richard M. Maresz, to be 5% at fault in causing an automobile accident in Louisville, Kentucky on December 16, 1986, and finding the appellee, Maresz, incurred a total of $420,261.00 in damages and the appellant, City of Louisville, incurred $4,404.85 in damages. Appellant alleges error in the jury instructions on three separate grounds, and that the jury verdict awarding damages for future medical expenses is not supported by the evidence.

The appellant alleges error in the jury instructions on the following grounds:

1. The trial court prejudicially erred by including a "sudden emergency" qualification in Jury Instruction No. 1.

2. The trial court prejudicially erred by holding the defendants to a standard higher than ordinary care in Jury Instruction No. 4.

3. The trial court prejudicially erred by improperly implying that the emergency vehicle exceptions in Jury Instruction No. 3 were specific duties.

On December 16, 1986, appellant, Joe Mooney, was traveling eastbound on Interstate 64 in Louisville, Kentucky. Mooney, a police officer for the City of Louisville, was driving his police cruiser while on duty and in transit from police headquarters in downtown Louisville to his assigned district

in the east end of the City. While on I–64, a "run" came over the police radio concerning an accident in the west bound lane of I–64 just east of the Cochran Tunnel. The "run" was not assigned to Officer Mooney; however, Officer Mooney informed the radio dispatcher that he would go by the scene to assist if necessary. As Officer Mooney approached the tunnel, he was positioned in the left lane of I–64. Appellee, Richard Maresz (who has no independent recollection of the accident) was traveling five or six car lengths behind appellant. A witness, Mr. Stephen A. Deutsch, was traveling in the same lane five or six lengths behind Maresz. After passing through the tunnel, Officer Mooney began to slow down and pull onto the left shoulder of I–64. Prior to his vehicle stopping, Officer Mooney was struck from behind by Maresz's vehicle. Deutsch testified that Officer Mooney's brake lights came on at least 100 yards prior to the collision and Maresz's brake lights did not come on until the last moment. In December 1987 Maresz brought a negligence action against the appellants. The appellants answered the complaint and also counter-claimed for their damages. Intervening Plaintiffs filed their complaints to recover what they had paid out to, and on behalf of, Maresz, and to answer the counter-claim of the defendants. A jury found both parties at fault. In awarding Maresz $420,261.00 and the City of Louisville $4,404.85, the jury assessed appellant Mooney 95% at fault and appellee Maresz 5% at fault.

The trial court instructed the jury in Instruction No. 1 as follows:

It was the duty of Richard Maresz, in driving his automobile, to exercise ordinary care for the safety of other persons using the highway, and this general duty included the following specific duties:

(a) To keep a lookout ahead for other persons and vehicles in front of him or so near to his intended line of travel as to be in danger of collision;

(b) Not to follow another vehicle more closely than was reasonable and prudent, having regard for the speed of the respective vehicles and for the traffic upon and condition of the highway;

(c) To have his automobile under reasonable control;

(d) To exercise ordinary care generally to avoid collision with other persons and vehicles on the highway;

(e) To drive at a speed no greater than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway.

All of the foregoing duties are subject, however, to this qualification: If immediately before the accident, the plaintiff was suddenly and unexpectedly confronted by the presence of Joseph Mooney's vehicle on the traveled portion of the highway so close that it appeared to the plaintiff in the exercise of reasonable judgment that he was in imminent danger of collision with the Mooney automobile and such emergency was not caused or borught (sic) about by any failure of the plaintiff to perform the duties set forth above, then he was required thereafter to exercise only such care as an ordinarily prudent person would exercise under the same conditions and circumstances.

If you are satisfied from the evidence that Richard Maresz failed to comply with any one or more of these duties and that such failure was a substantial factor in causing the accident, you will find Richard Maresz at fault.

We, the Jury, find Richard Maresz at fault:

Yes ____

No ____

The jury marked "yes."

Appellee argues that the appellant failed to preserved this alleged error for appeal. We find that appellant complied with Civil Rule 51 of the Kentucky Rules of Civil Procedure by tendering an alternative instruction omitting sudden emergency. We further find that the giving of a sudden emergency instruction was in error, but that it was harmless error.

■ In *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973), this state's Highest Court discussed when an instruction on a motorist's duty should be qualified by the sudden emergency proviso. The Court stated:

To summarize this phase of the discussion, whether the instruction on a motorist's duties should be qualified by a proviso such as the sudden emergency theory does not depend upon whether the particular circumstance might be characterized in common parlance as a "sudden emergency," but whether it changes or modifies the duties that would have been incumbent upon him in the absence of that circumstance. In this case the qualification was made necessary because by not remaining on the right side of the road Sechrest violated a specific duty unless the exceptional circumstance of the ice on the road had the effect of relieving him from it. Had the accident taken place in his own lane of travel, or on the right side of the highway, it would not have been necessary, because then the unexpected presence of the ice would have amounted to no more than a condition bearing upon the question of whether the accident resulted from a failure on his part to comply with the more generalized duties of ordinary care. The proper criterion is whether any of the specific duties set forth in the instruction would be subject to exception by reason of the claimed emergency.

*Harris*, 497 S.W.2d at 428.

In this case the accident occurred in Maresz's own lane of travel. The unexpected

presence of the stopped or slow-moving Mooney vehicle "amounted to no more than a condition bearing upon the question of whether the accident resulted from a failure on his part to comply with the more generalized duties of ordinary care." *Harris v. Thompson, supra*. "Indeed it may be said that all automobile accidents are sudden in a literal sense. But such is not the test. This distinction is set out in *Harris, supra*." *Paducah Area Public Library v. Terry*, Ky.App., 655 S.W.2d 19, 22 (1983).[1]

"The rule is that, where a person has been placed in a position of peril by the negligence of another, he may recover for his injury although he may not, as shown by subsequent events, adopt the safest course, provided he uses such care and judgment as might be fairly expected of a person of ordinary prudence under the circumstances." *L. & N. v. Taylor*, 104 S.W. [776] 777, 31 Ky. Law Rep. 1142; *L. & N. v. McNary*, 128 Ky. [408] 420, 108 S.W. 898, 32 Ky. Law Rep. 1266, 17 L.R.A. (N.S.) 224, 129 Am.St.Rep. 308; *I.C. [L. & N. R. Co.] v. Hays*, 128 S.W. 287 [289]; *L. & N. v. Cook*, 128 S.W. [81] 83; *C. & O. v. Dawson*, 159 Ky. [296] 300, 167 S.W. 125.

*Chesapeake & Ohio Railway Company v. Hoskins' Administrator*, 164 Ky. 575, 176 S.W. 29, 31 (1915).

*C.V. McCabe's Adm'x*, 30 Ky.L.Rptr. 1009, 100 S.W. 219 (1907).

In *South Covington and Cincinnati Street Railway Company v. Ware*, 84 Ky. 267, 8 Ky.L.Rptr. 241, 1 S.W. 493, 494 (1886), the Highest Court in Kentucky quoted the Supreme Court of the United States in the case of *Stokes v. Saltonstall*, 38 U.S. (13 Pet.) 181, 191, 10 L.Ed. 115 (1839) as follows:

"But if the want of proper skill or care of the driver placed the passengers in a state of peril, and they had, at that time a *reasonable* ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff is entitled to recover, although the jury may believe, from the position in which the stage was placed by the negligence of the driver, the attempt of the plaintiff or his wife to escape may have increased the peril, or even caused the stage to upset, and although they may also find that the plaintiff and his wife would probably have sustained little or no injury if they had remained in the stage."

1. In the law of negligence, sudden emergency developed from the choice of evils or of dangerous courses doctrine. *Commonwealth v. Bowman*, 267 Ky. 50, 100 S.W.2d 801 (1936); *Illinois Central Railway Co. v. Wilkins*, 149 Ky. 35, 147 S.W. 759 (1912); *Padgett v. Brangan*, 228 Ky. 440, 15 S.W.2d 277 (1929); *Creasy v. Bunch*, 232 Ky. 56, 22 S.W.2d 446 (1929); *Owen Motor Freight Lines v. Russell's Adm'r*, 260 Ky. 795, 86 S.W.2d 708 (1935); *Moreland's Adm'r v. Stone*, 292 Ky. 521, 166 S.W.2d 998 (1942). Many of the early cases concerned the common transportation of the era—railroad and horse and coach. *Big Sandy & Kentucky River Railway Company v. Keaton*, 206 Ky. 156, 266 S.W. 1056 (1924); *I.C.R.R. Co. v. Wilkins*, 149 Ky. 35, 147 S.W. 759 (1912); *C. & O. Ry. Co. v. Hoskins' Admr*, 164 Ky. 575, 176 S.W. 29 (1915); *L. & N. R.R. Co. v. Locker's Admrs.*, 182 Ky. 578, 206 S.W. 780 (1918); *L. & N. R. Co. v. Molloy's Admx.*, 122 Ky. 219, 91 S.W. 685 (1906); *Louisville & N. R. Co. v. Taylor's Adm'r*, 31 Ky.L.Rptr. 1142, 104 S.W. 776 (1907); *Maysville & Big Sandy R.R. Co., &*

This case does not present a sudden emergency, only a sudden occurrence. The evidence clearly supports the conclusion that appellant Mooney acted suddenly in slowing or stopping his vehicle. However, there is no evidence whatsoever that appellee Maresz, when presented with this sudden occurrence, chose a course of conduct which appeared at the time to have been the safest course, which now appears not to have been the best or wisest choice, and which resulted in injury. *House v. Kellerman*, Ky., 519 S.W.2d 380 (1975).[2] In short, there is no evidence that appellee Maresz in responding to the sudden occurrence acted in such a way that he could be held negligent because of his response, thus he has no need for the sudden emergency instruction.[3] Maresz was, however, presented with a sudden occurrence that may have resulted in his inability to avoid the collision with appellant Mooney's vehicle regardless of his previous exercise of ordinary care. (*See infra.*)

In *Webb v. Boydston*, Ky., 439 S.W.2d 955, 956 (1969), the trial court gave a sudden emergency instruction when: "the Boydston car hit the Webb car in the rear while both cars were in the passing lane of the Kentucky Turnpike." The Court of Appeals recognized the problem with giving a sudden emergency instruction under such circumstances, but stated:

> The real question presented to the jury was whether or not the Webb car had

---

**2.** In *House*, at 383–384, the Court stated:

Nor should there have been an instruction on sudden emergency. As explained in *Harris v. Thompson*, Ky., 497 S.W.2d 422, 428 (1973), the occasion for presenting that theory in the instructions does not depend on whether the occurrence in question could reasonably be regarded as in fact a sudden emergency, but whether it alters or modifies the duties that otherwise would have been obligatory on the driver whose conduct is under judgment. "The proper criterion is whether any of the specific duties set forth in the instruction would be subject to exception by reason of the claimed emergency." *Ibid.* To illustrate, if the unexpected approach or presence of some object, person or condition in or near the driver's intended path of travel caused him to turn into the wrong lane, into a lane occupied by another vehicle, or off the pavement, or to make some other unorthodox move which may appear afterward not to have been the best or a wise choice, an exculpatory qualification in the form of the sudden emergency theory is appropriate. In this case such a qualification might have been applicable to the duties of Leslye Hill had she taken to the median by choice, but of course she did not go there by her own volition. However, it was inapplicable to the duties of Kellerman for the simple reason that he made no choice. In fact, according to his version of the accident he had no opportunity to make a choice. His defense is adequately embraced by a standard instruction submitting the question of whether under all the attending circumstances (which necessarily included the emergency) he exercised the degree of care an ordinarily prudent person would exercise in the same situation.

**3.** *Cf. Weichhand v. Garlinger*, Ky., 447 S.W.2d 606 (1969), (The recipient of the sudden emergency instruction (Garlinger) alleged that it was the other motorist's (Weichhand's) actions in passing a third automobile that caused Garlinger to apply his brakes and to skid into the path of Weichhand. Without the sudden emergency instruction changing the duty of Garlinger he would be negligent as a matter of law for driving his vehicle in the lane belonging to Weichhand.); *Phipps v. Bisceglia*, Ky., 383 S.W.2d 367 (1964), (A third vehicle pulled into the highway from a driveway causing Bisceglia to swerve his car into the left lane to avoid the third vehicle. Phipps was attempting to pass Bisceglia at the same time and Phipps and Bisceglia collided. The sudden emergency instruction was necessary to alter the duty of Bisceglia who had gone into the left lane in such a manner that without the sudden emergency instruction, his action would have been negligent as a matter of law.); *Agee v. Hammons*, Ky., 335 S.W.2d 732 (1960), (Hammons swerved to the left to go around a truck that had just pulled in front of him out of a driveway, and in so doing he collided head-on with the Agee car on the latter's side of the road. The sudden emergency instruction was necessary to avoid Hammons being negligent as a matter of law for colliding with Agee in Agee's lane.); and *Ryan v. Payne*, Ky., 446 S.W.2d 273 (1969), (Ryan was not negligent as a matter of law and was entitled to a sudden emergency instruction when he swerved into the lane of the on-coming Payne vehicle since Ryan swerved into that lane in an attempt to avoid a truck that had pulled out in front of Ryan in Ryan's lane, thereby creating a sudden emergency.) "[t]hat where one is forced to suddenly switch lanes in daylight because of a vehicle in front of him suddenly checking its speed this is not as a matter of law such negligence as to warrant a directed verdict." *Ryan*, 446 S.W.2d at 276 (citing *Nall v. Larkin*, Ky., 421 S.W.2d 74 (1967); *McCoy v. Carter*, Ky., 323 S.W.2d 210 (1959); *Pratt Fruit Co. v. Sparks Brothers Bus Co.*, 313 Ky. 593, 233 S.W.2d 92 (1950)).

given sufficient warning of its sudden stop in order for Boydston to have avoided a collision, provided Boydston was using due care. Furthermore, the instruction as given referred to the operation of the " * * * automobile in such a manner as a reasonable prudent man would do under like or similar circumstances." ...

. . . .

We are of the opinion that under all of the evidence the jury reached a correct conclusion and that while the instruction perhaps could have been couched in more acceptable language, this was not such an error as to justify a reversal or a retrial of this case.

*Webb,* at 957. Likewise, in this case the instructions could have been more artfully worded, but the sudden emergency instruction, while not appropriate, was harmless error.

■ Appellant's arguments as to the specificity of the jury instructions are without merit. The trial court is said to have erred in implying that the emergency vehicle exceptions in Instruction 3 were specific. It is true, as appellant argues, that the "general rule is that instructions should not give undue prominence to certain facts or issues." *Croushorn Equipment Company v. Moore,* Ky., 441 S.W.2d 111, 115 (1969). "[T]he instructions should not make a rigid list of ways in which a defendant must act in order to meet his duty." *Rogers v. Kasdan,* Ky., 612 S.W.2d 133, 136 (1981). This does not mean, however, that a court may not specify the *duties* of an alleged wrongdoer. There is a difference between instructing on the duty to warn others of a dangerous condition and instructing on ways in which that duty may be met. *Cf. Croushorn Equipment Co.,* 441 S.W.2d 111.

In *Croushorn* the trial court was held to have erred in instructing on a duty to warn "by the use of signs, signals, guards, with the hands, or other practical means...." *Id.* at 114. The trial court was told that on remand it should instruct on "a general duty of ordinary care to warn oncoming traffic...." *Id.* at 115. The jury was to be allowed to decide whether the defendant's actions were reasonable because the law did not say that any particular actions or warnings were necessary. *See Croushorn,* 441 S.W.2d at 114. "[Another] vice of listing [particular] means [of non-negligent conduct] in the instruction was the apparent suggestion of the many things that [defendant] could have done, thereby inferring that his failure to do any of them was all the more palpable." *Id.* at 115.

■ Notwithstanding the decision in *Croushorn,* there are circumstances where the court should give instructions which relate to specific actions of the parties. In particular, when a statute or ordinance prescribes or proscribes certain actions, "[t]he duties of the parties defined by the ordinance [or statute] should be covered by the instructions." *Newman v. Lee,* Ky., 471 S.W.2d 293, 296 (1971).

In one case, the trial court specifically instructed that a pedestrian's duty to exercise ordinary care included the duty: " '[i]n crossing Seventh Street other than at an intersection to yield the right of way to vehicular traffic on Seventh Street.' " *Wright v. City of Louisville,* Ky., 477 S.W.2d 146, 147 (1971). There was no doubt that plaintiff's decedent (the pedestrian) had *not* yielded the right of way. Thus, the plaintiff argued that the giving of the instruction "was equivalent to granting a peremptory instruction against the plaintiff." *Id.* Nevertheless, the Court of Appeals held that the instruction was properly given.

■ In the present case, Officer Mooney's conduct in suddenly stopping his car in the left lane of an interstate highway would be negligent per se. *See* KRS 189.-390(5); *Peak v. Barlow Homes,* Ky.App., 765 S.W.2d 577 (1988). The evidence and argument presented, however, seems to have been aimed at showing that, since he was a police officer, he had a valid excuse for disregarding the applicable statute. Contentions of this kind have been considered before.

In *Gasparac v. Castle,* Ky., 330 S.W.2d 111 (1959), an ambulance driver drove his

ambulance through a red light, thereby damaging Castle. The ambulance driver contended that he had the right of way. The Court held as follows:

> The appellants' argument that as a matter of law their ambulance had the right of way and was in a place it had the legal right to be at the time of the collision is subject to qualification. The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended.... There must be strict observance of the conditions which will exempt an emergency vehicle. When a driver has the preferred right of way, *he must be especially alert when he intends to [disregard traffic regulations] and must take care commensurate with the serious consequences that might follow his failure to do so. He should remember that other drivers have the right to assume that [traffic regulations] will be obeyed by him unless duly and timely warned to the contrary.* [Emphasis added.]

*Gasparac,* 330 S.W.2d at 113.

■ In short, Officer Mooney had the right to argue that he should be exonerated because, as a police officer, he had the right to disregard traffic regulations. But having allowed into evidence Officer Mooney's reasons for stopping, the trial court was obligated to set out Officer Mooney's duties and the conditions under which his disregard of the law could be excused. *See* KRS 189.940; *Cf. Wright,* 477 S.W.2d 146. "The duties of the parties defined by [ ] ordinance should be covered by the instructions." *Newman v. Lee,* Ky., 471 S.W.2d 293, 296 (1971). We believe that the instructions fairly set out the duties of the parties and the conditions under which certain breaches of duty could be excused. *See Wright,* 477 S.W.2d 146; *Newman,* 471 S.W.2d 293; *Cf. City of Louisville v. Chapman,* Ky., 413 S.W.2d 74 (1967).

As to Officer Mooney's contention that he was held to a standard higher than ordinary care, we see no reversible error. Appellant argues that Mooney's status as a police officer was not relevant to the duties of the defendant under the evidence of this case. Yet, as set out above, if Mooney had not been a police officer, his conduct would have been negligent *per se.* Under the evidence, it appears that the plaintiff would have been entitled to a directed verdict on the question of whether Mooney was at fault in causing the accident. The only real issue was what proportion of the fault should have been allocated to Mooney.

The Court said in *Gasparac* that when a driver intends to disregard traffic regulations, "he must be especially alert ... and must take care commensurate with the serious consequences that might follow his failure to do so. He should remember that other drivers have the right to assume that [regulations] will be obeyed by him unless duly and timely warned to the contrary." *Gasparac,* 330 S.W.2d at 113.

> An actor with superior attention, perception, memory, knowledge, intelligence, and judgment, is required to exercise those superior qualities which he possesses in a manner reasonable under the circumstances. For example, a lifeguard, or an employee held out to the public as such, is required in the performance of his duties to exercise that degree of care which an ordinarily prudent lifeguard, possessing the requisite training and skills, would exercise in the same or similar circumstances.

57A Am.Jur.2d *Negligence* Section 159 (1989) (footnotes omitted). We do not believe it to be too great an imposition to require that those who have superior equipment, as Officer Mooney undoubtedly did, use it in appropriate circumstances. We do not believe that the instructions required any more than that.

■ Appellant alleges error by claiming the jury verdict awarding $34,680 in damages for future medical expenses was not supported by the evidence. We find that there was an abundance of testimony pro-

vided by Dr. Daniel Duran, the treating orthopedic specialist, to support the damages awarded by the jury. Dr. Duran provided testimony as follows: (1) Maresz was "absolutely at an increased risk for developing a significant post-traumatic arthritis"; (2) Maresz was certainly at an increased risk for developing the disabling hip condition; (3) Maresz was "certainly at an increased risk for this hip replacement problem"; (4) If the hip replacement occurs at a relatively early age, the wear-out aspect would have to be considered; (5) The work activity of Maresz will increase the wear rate and increase the risk of injury to the hip; and (6) Within three years of the motor vehicle accident, an MRI showed degenerative changes only in the injured hip joint, Maresz had mild narrowing of the joint with post-traumatic changes and arthritis.

In *Davis v. Graviss*, Ky., 672 S.W.2d 928, 932 (1984), the Supreme Court stated "where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications." In discussing the appellate court's role the Supreme Court in *Davis* went on at page 933 to state "[t]hose rules charge us with the responsibility to review the record and decide whether, when viewed from a standpoint 'most favorable' to the prevailing party, there is evidence to support the verdict and judgment. *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981)." Clearly, there is sufficient evidence to support the jury's award for future medical expenses in this case.

Affirmed.

WILHOIT, J., concurs.

EMBERTON, J., concurs in result only.