Al GIBBS and Kentucky Farm Bureau
Insurance Company, Appellants,

v.

Larry WICKERSHAM, Appellee.

No. 2003–CA–000646–MR.

Court of Appeals of Kentucky.

April 16, 2004.

Philip J. Edwards, Louisville, KY, for
appellant.

William P. Koehler, III, Sitlinger,
McGlincy, Theiler & Karem, Louisville,
KY, for appellee.

Before EMBERTON, Chief Judge;
SCHRODER and TACKETT, Judges.

## OPINION

TACKETT, Judge.

Al Gibbs and Kentucky Farm Bureau Insurance Company appeal from the judgment of the Jefferson Circuit Court granting Larry Wickersham a directed verdict. The sole issue presented is whether the directed verdict was appropriate. We affirm.

Gibbs and Wickersham were involved in an automobile accident in the eastbound lanes of Westport Road in Jefferson County on December 26, 2000 at or about 6:30 in the evening. It had begun to snow and road conditions were icy and hazardous. It is undisputed that Gibbs lost control of his 2000 Jaguar and headed into the left lane toward the median where his Jaguar collided with Wickersham's 1995 Ford Windstar. Gibbs's testimony was that his rear-wheel drive vehicle began fishtailing within his lane on the roadway and that while trying to gain control of his vehicle, he slid from the right lane in which he was traveling, into the left lane in which Wickersham was traveling. Gibbs testified that he never saw Wickersham before crossing over into Wickersham's lane of traffic and colliding with him. Gibbs testified that when he spun into the left lane occupied by Wickersham, he took his foot off of the accelerator and his speed remained constant. At this point Wickersham's 1995 Ford Windstar van struck Gibbs's automobile.

Wickersham testified that as soon as he noticed that Gibbs was losing control of his vehicle, he began to slow his own vehicle by removing his foot from the accelerator. Wickersham testified that he felt it was dangerous to immediately apply his brakes on an icy surface. He estimated that only three to five seconds had lapsed between the time he first observed Gibbs's automobile and the time he removed his foot from the accelerator and depressed the brake. Wickersham testified that Gibbs was then instantaneously in front of him in his lane. Wickersham testified that there was no possible way to keep from colliding with Gibbs once Gibbs spun out of control and into his lane of traffic. Wickersham testified that there was no time to take evasive action to avoid the collision. Wickersham further testified that he never took his eyes off the road and was always in absolute control of his vehicle while driving in the left lane of Westport Road.

The trial court directed a verdict against Gibbs based upon the conclusion that "this was an unfortunate set of circumstances" and that it was "just an accident." The court also explained that there was no testimony offered to prove that Wickersham had violated any of his duties, ruling that there must be proof of a violation of duty and not mere speculation. This appeal followed.

The standard of review for an appeal of a directed verdict is firmly entrenched in our law. A trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or there are no disputed issues of fact upon which reasonable minds could differ. *Bierman v. Klapheke*, Ky., 967 S.W.2d 16, 18 (1998). Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts. *Id.* at 19. A motion for directed verdict admits the truth of all evidence favorable to the party against whom the motion is made. *National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855, 860 (1988) *citing Kentucky Indiana Terminal R. Co. v. Cantrell*, 298 Ky. 743, 184 S.W.2d 111 (1944). Upon such motion, the court may not consider the credibility of evidence or the weight it should be given, this being a function reserved for the trier of fact. *National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855, 860 (1988) *citing*

*Cochran v. Downing*, Ky., 247 S.W.2d 228 (1952). The trial court must favor the party against whom the motion is made, complete with all inferences reasonably drawn from the evidence. The trial court then must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be "palpably or flagrantly" against the evidence so as "to indicate that it was reached as a result of passion or prejudice." In such a case, a directed verdict should be given. Otherwise, the motion should be denied. *National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855, 860 (1988) *citing Nugent v. Nugent's Ex'r*, 281 Ky. 263, 135 S.W.2d 877 (1940).

■■■ It is well-argued and documented that a motion for a directed verdict raises only questions of law as to whether there is any evidence to support a verdict. *Harris v. Cozatt, Inc.*, Ky., 427 S.W.2d 574, 575 (1968). While it is the jury's province to weigh evidence, the court will direct a verdict where there is no evidence of probative value to support the opposite result and the jury may not be permitted to reach a verdict based on mere speculation or conjecture. *Wiser Oil Co. v. Conley*, Ky., 380 S.W.2d 217, 219 (1964) *citing Kentucky Transport Corp. v. Spurlock*, Ky., 354 S.W.2d 509 (1961); *Myers v. Walker*, Ky., 322 S.W.2d 109 (1959). In the case at bar, any jury conclusion would have been speculative or conjectural in that fault in this situation simply cannot be accurately allocated. *Harris v. Cozatt, Inc.*, Ky., 427 S.W.2d 574, 575 (1968) *citing Wiser Oil Co. v. Conley*, Ky., 380 S.W.2d 217 (1964).

The trial court stated that there was no evidence produced showing that Wickersham violated any of his duties and further that there must be proof of a violation of a duty, not mere speculation. The verdict was directed at the close of Wickersham's case, and, therefore, no jury instructions were argued or offered. Gibbs suggests that it was Wickersham's duty to keep a lookout ahead for vehicles in front of him or near his intended line of travel, as well as have regard for the speed of the respective vehicles and for the traffic and condition of the highway, maintain his automobile under reasonable control, and drive at a reasonable and prudent speed exercising ordinary care to avoid collision. *Palmore, Kentucky Instructions to Juries* (Civil), 16.29. Conversely, according to the same instruction, it is the duty of the driver of the front automobile, in this case Gibbs, to exercise ordinary care with this general duty including, but not limited to, the proceeding specific duties. Gibbs is required to keep a lookout ahead and to the rear for other vehicles, exercise ordinary care to avoid collision, and have regard for the traffic and condition and use of the highway. However, Gibbs offers no evidence that any of the elements of Wickersham's duties were breached. Wickersham's testimony was that he was totally in control of his vehicle, traveling at a safe speed for the conditions and doing everything he could to avoid the collision when Gibbs entered his lane. Gibbs offered no evidence to conflict with Wickersham's testimony that he was adhering to all the duties imposed on him by law. Gibbs also failed to call any witness to testify as to any deviations by Wickersham from the standard of ordinary care.

The evidence shows Gibbs lost control of his automobile on an icy road and slid directly into the path of an oncoming vehicle. Gibbs offered no direct or reliable circumstantial evidence that Wickersham violated any of his duties. Gibbs attempts to convince the trial court, albeit without any evidence, that since it appears that Wickersham might have been traveling faster than Gibbs while traveling in the fast lane, and might have waited a few seconds before depressing his brakes on

an icy roadway, that he should be held liable for the accident. However, it was not Wickersham's duty to drive slower than the vehicle traveling in the slow lane. Nor was it the duty of Wickersham to endanger himself and his passengers by immediately slamming on his brakes on an icy road when the first signs of danger appeared. In sum, there was no evidence Wickersham breached his duty to exercise ordinary care. Given the icy road conditions, the accident was unavoidable.

For the reasons set out above, the decision of the Jefferson Circuit Court below should be affirmed.

ALL CONCUR.