Tammy ROBINSON;  and State Farm Mutual Automobile Insurance Company, Appellants,

v.

Norman LANSFORD;  and Allstate Insurance Company, Appellees.

Nos. 2004–CA–000325–MR, 2004–CA–000351–MR.

Court of Appeals of Kentucky.

Oct. 27, 2006.

Rehearing Denied April 30, 2007.

Jeffery T. Sampson, Louisville, KY, for appellant.

Wm. Clifton Travis, Louisville, KY, for appellee.

Before COMBS, Chief Judge; JOHNSON, Judge; EMBERTON,[1] Senior Judge.

## OPINION

JOHNSON, Judge.

Tammy Robinson has appealed from a judgment of the Jefferson Circuit Court entered on January 20, 2004, dismissing her complaint against Norman Lansford following a jury verdict in Lansford's favor. Having concluded that Robinson was not entitled to a directed verdict on the issue of liability, we affirm on that issue. Having further concluded that the trial court committed reversible error by instructing the jury on the sudden emergency doctrine regarding Lansford's duties of care, we reverse and remand for a new trial.[2]

First, we note that, unlike the Kentucky Rules of Criminal Procedure, the Kentucky Rules of Civil Procedure do not contain any provisions requiring the trial court to consult with counsel concerning questions posed by the jury during deliberations. *See* Kentucky Rules of Criminal Procedure 9.74. Secondly, Kentucky Rules of Evidence (KRE) 411 specifically prohibits the introduction of evidence "that a person was or was not insured against liability ... upon the issue whether the person acted negligently or wrongfully." This rule "is founded on the premises that it is irrelevant to the issue of whether insureds tend to be less careful than uninsureds, and more importantly, that knowledge of insurance coverage might cause the jury to impose liability without regard to fault." *White v. Piles*, 589 S.W.2d 220, 222 (Ky.App.1979). Perhaps, the trial court should have answered the question posed by the jury by stating, "whether or not a person is insured is not relevant to your

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Robinson also contends she is entitled to a new trial because the trial court abused its discretion by answering questions from the jury without input from counsel. Specifically, the jury asked the following questions, and the trial court gave the following answers:
   Q: Can we have a copy of the police report?
   A: You have all the evidence that has been admitted in this case.
   Q: Is Norman Lansford being sued personally or is his insurance company?
   A: Mr. Lansford is the Defendant.
Robinson's argument on this matter centers on the second question concerning Lansford's insurance company and the trial court's answer.

On October 1, 1998, Robinson was driving her vehicle in the center lane of northbound Interstate 65 in Louisville, Jefferson County, Kentucky. Lansford was driving his vehicle behind Robinson in the same lane. Both drivers testified that traffic was congested due to an earlier accident. Robinson testified that as she passed the scene of the prior accident the congestion lessened and that two vehicles merged in front of her from the right lane of travel. Shortly thereafter, traffic quickly slowed again and Robinson struck the rear of the car in front of her being driven by William Kreig causing her vehicle to stop suddenly. Lansford testified that he was approximately three to four car lengths behind Robinson's vehicle when she stopped suddenly after striking the vehicle. Lansford was unable to stop his vehicle and struck the rear of Robinson's vehicle. Robinson filed suit against Lansford for personal injuries she sustained as a result of the accident. After the jury returned a verdict in favor of Lansford, Robinson filed a motion for a new trial pursuant to CR 59.01(h), which was denied by the trial court by a memorandum and order entered on February 5, 2004. This appeal followed.

Robinson contends the trial court erred by denying her motion for a directed verdict on the issue of Lansford's liability. She argues that because Lansford admitted on cross-examination that he was cited for following too closely and that this action contributed to the accident in that he did not have time to avoid the accident after Robinson abruptly stopped in front of him, the trial court erred by not granting her a directed verdict as to liability.

In ruling on a motion for a directed verdict, the trial court must consider the evidence in the strongest possible light in favor of the non-moving party including all inferences that may be reasonably drawn from the evidence.[3] A directed verdict should be granted if the evidence is such that a verdict in favor of the non-moving party would be " 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.' "[4]

As previously noted, the evidence in this case indicated that Lansford was following Robinson in slow traffic when Robinson abruptly stopped her vehicle after striking a vehicle traveling in front of her. Lansford testified that he was traveling three or four car lengths behind Robinson and that he did not have sufficient warning that she was about to stop her vehicle for him to avoid striking it. We conclude that this evidence, considered in the light most favorable to Lansford, was sufficient to present an issue of fact for the jury as to whether Robinson gave sufficient warning of her sudden stop to allow Lansford to avoid the accident if he had used due care. Thus, the trial court did not err in denying Robinson's motion for a directed verdict on the issue of liability.

Robinson also claims the trial court erred by including a sudden emergency qualification in its instructions regarding Lansford's duties of care. Specifically, the trial court instructed the jury as follows:

> INSTRUCTION NO. 2: It was the duty of Defendant in the operation of his automobile to exercise ordinary care for

duties as a juror"; however, the answer given did not constitute reversible error.

**3.** *Lewis v. Bledsoe Surface Mining Co.,* 798 S.W.2d 459 (Ky.1990); *Gibbs v. Wickersham,* 133 S.W.3d 494, 496 (Ky.App.2004).

**4.** *Lewis,* 798 S.W.2d at 461–62 (quoting *National Collegiate Athletic Association by and through Bellarmine College v. Hornung,* 754 S.W.2d 855, 860 (Ky.1988)).

his own safety and the safety of other persons using the highway and this general duty included the following specific duties:

> (a) To keep a lookout for other persons and vehicles in front of him or so near his intended line of travel as to be in danger of collision, and not to follow another vehicle more closely than was reasonable and prudent, having regard for the speed of the respective vehicles for the traffic upon and condition of the highway;
>
> (b) To have his automobile under reasonable control;
>
> (c) To drive at a speed no greater than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway;
>
> (d) To exercise ordinary care generally to avoid collision with other persons and vehicles on the highway, including the automobile of Plaintiff.

*All of these duties of Defendant being subject, however, to this qualification that if immediately before the accident Plaintiff's automobile suddenly and unexpectedly came to a stop in front of Defendant's automobile, and if the emergency presented was not caused or brought about by any failure by Defendant with his duties as above set forth, Defendant was required to exercise only such care as the jury would expect an ordinarily prudent person to exercise*

*under the same conditions or circumstances* [emphasis added].

If you are satisfied from the evidence that Defendant failed to comply with one or more of his duties as set forth in this instruction and that such failure was a substantial factor in causing the accident, you find for Plaintiff on her claims against Defendant; otherwise you find for Defendant on Plaintiff's claims against him.

■■■ "The common-law doctrine of 'sudden emergency' attempts to explain to a jury how to judge the allegedly negligent conduct of a person, plaintiff or defendant, who is suddenly confronted with an emergency situation that allows no time for deliberation" [footnote omitted].[5] The doctrine should be applied if it changes or modifies a duty that would have been incumbent upon a plaintiff or defendant in the absence of the emergency.[6] However, we believe that "[t]his case does not present a sudden emergency, only a sudden occurrence"[7] as the evidence does not indicate that Lansford took any action as a result of encountering an emergency, such as swerving into another lane of traffic or running onto the shoulder or median of the roadway. Rather, Lansford was "presented with a sudden occurrence that may have resulted in his inability to avoid the collision ... regardless of his previous exercise of ordinary care" [citation omitted].[8]

■■■ This case is factually similar to the cases of *Maresz* and *Webb v. Boydston*.[9] In both cases, a motor vehicle accident occurred when a vehicle traveling behind another vehicle rear-ended the front vehicle after that vehicle slowed or stopped

---

5. *Regenstreif v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004).

6. *Harris v. Thompson*, 497 S.W.2d 422 (Ky. 1973); *Regenstreif, supra.*

7. *City of Louisville v. Maresz*, 835 S.W.2d 889, 893 (Ky.App.1992).

8. *Maresz*, 835 S.W.2d at 893.

9. 439 S.W.2d 955 (Ky.1969).

suddenly. In this case, Lansford rear-ended Robinson after Robinson's vehicle stopped abruptly when she rear-ended the vehicle traveling in front of her. The instructions properly set out Lansford's duties and specifically provided that he had a duty not to follow too closely to another vehicle with regard to the speed of the other vehicles and to exercise ordinary care to avoid colliding with other vehicles on the roadway.

■ Robinson argued at trial that Lansford breached his duties by following too closely because he admitted that if he had had more room he could have stopped his vehicle before striking Robinson's vehicle. As in *Webb*, the real question for the jury to decide in this case was "whether or not the [Robinson] car had given sufficient warning of its sudden stop in order for [Lansford] to have avoided a collision, provided [Lansford] was using due care." [10] Thus, we conclude that the instructions erroneously qualified Lansford's duties, and the giving of this inappropriate sudden emergency instruction constitutes reversible error.

Lansford argues that at most the erroneous jury instruction was harmless error. He states in his brief as follows:

> The key to the jury instructions in this case is that before the "sudden emergency" instruction became relevant, the jury had to find that the emergency which confronted Lansford was not brought about by any failure by Lansford to properly follow his duties of lookout, following distance, control, speed, and the exercise of ordinary care. If the jury found that Lansford violated any of the general or specific duties applicable to him, they could not apply the "sudden emergency" part of the instructions. Any use of the "sudden

emergency" instruction, therefore, was harmless. The jury (as the instructions indicated) had to first find Lansford free from a breach of his general and specific legal duties—and they did [footnote omitted].

. . . .

The sudden emergency instruction, as given by the trial court in the case at bar, did not change Appellee Lansford's general and/or specific legal duties. Robinson was not precluded from arguing that Lansford was speeding, failed to keep a proper lookout, failed to have his vehicle under reasonable control, or followed the Robinson vehicle at a distance that was unreasonable or imprudent under the circumstances. The jury was free to find Lansford negligent in causing the accident if it believed that Lansford breached one of his stated general and/or specific legal duties, and that the breach was the cause of plaintiff's injuries.

We reject Lansford's interpretation of the jury instruction because it is contrary to the plain language of Instruction No. 2 which specifically stated that "[a]ll of these duties of Defendant being subject, however, to this qualification that if immediately before the accident Plaintiff's automobile suddenly and unexpectedly came to a stop in front of Defendant's automobile, and if the emergency presented was not caused or brought about by any failure by Defendant with his duties as above set forth, Defendant was required to exercise only such care as the jury would expect an ordinarily prudent person to exercise under the same conditions or circumstances." Thus, the jury was required to excuse Lansford from violating any of the specific duties in subsection (a), (b), (c), and (d) of this instruction if it believed Lansford en-

10. *Webb,* 439 S.W.2d at 957.

countered a sudden emergency, even though upon Lansford's encountering this emergency, he was required to exercise ordinary care under those conditions. This approach creates a situation where Lansford's failure to exercise ordinary care before the occurrence of the 'emergency would be, as long as he did not cause the emergency, excused by the emergency even if his failure to meet one of those original duties caused the accident. For example, under the trial court's instructions if Lansford violated the duty to keep a lookout and this failure caused the accident by his striking Robinson's vehicle in the rear after it suddenly stopped, Lansford would not be at fault if he exercised ordinary care after seeing Robinson's vehicle stopped because his initial failure to keep a lookout did not cause or bring about the emergency; *i.e.,* the sudden stopping of Robinson's vehicle. In other words, if the "emergency" referred to in the instruction is the incident that caused Robinson to suddenly stop, instead of her being stopped in the roadway, then Lansford's duties would have been limited to only how he acted *after* he noticed Robinson being stopped in the roadway. The effect of such an instruction would relieve Lansford of his portion of fault for causing the accident if his violating of one of his initial duties in sections (a) through (d) contributed to the cause of the accident; *e.g.,* not keeping a lookout.

Lansford's reliance on *Maresz* and *Webb* in claiming harmless error is misplaced since the instruction in the case before us lacks the saving language that appeared in *Maresz* and *Webb*. In *Maresz*, the plaintiff was driving the car which rear-ended the defendant's car, and the instruction included this additional qualifying language:

All of the foregoing duties are subject, however, to this qualification: If immediately before the accident, the plaintiff was suddenly and unexpectedly confronted by the presence of Joseph Mooney's vehicle on the traveled portion of the highway so close that it appeared to the plaintiff in the exercise of reasonable judgment that he was in imminent danger of collision with the Mooney automobile and such emergency was not caused or [brought] about by any failure of the plaintiff to perform the duties set forth above, then he was required thereafter to exercise only such care as an ordinarily prudent person would exercise under the same conditions and circumstances.[11]

This Court held that while "the instructions could have been more artfully worded, [ ] the sudden emergency instruction, while not appropriate, was harmless error."[12] An important distinction between *Maresz* and the case before us is that in *Maresz* the defendant was driving the car which suddenly stopped and the plaintiff struck the defendant in the rear. Of course, Robinson's and Lansford's roles in this case were reversed from the plaintiff and defendant in *Maresz*.

In *Webb,* the jury found for the defendants, the Boydstons, on the Webbs' claim that Mr. Boydston was negligent in allowing his vehicle to crash into the rear of the Webb vehicle in an accident occurring on the former Kentucky Turnpike. The jury instruction at issue stated as follows:

"(1) The law of this case is for the plaintiffs and the jury will so find unless you believe from the evidence that the defendant, Arland Boydston, was suddenly and unexpectedly confronted with an emergency to which he did not contribute and that he was thereby placed in a position of peril and acted in such emer-

11. *Maresz,* 835 S.W.2d at 891.

12. *Id.* at 894.

gency, then he was not required under the law to adopt the best possible course to avoid the impending danger, but had the right to operate his *automobile in such a manner as a reasonably prudent man would do under like or similar circumstances*. If the jury find that Boydston acted in such a manner, then the law is for the defendants, Arland Boydston and Barbara Boydston, and the jury will so find [emphasis added]." [13]

The Court stated that "[t]he real question presented to the jury was whether or not the Webb car had given sufficient warning of its sudden stop in order for Boydston to have avoided a collision, provided Boydston was using due care." [14] The Court held that the language in the instruction that referred to the operation of the "automobile in such a manner as a reasonabl[y] prudent man would do under like or similar circumstances" "conveyed the necessary information to the jury and that it was not misled." [15]

The instruction in *Webb* clearly identified the emergency as the situation that confronted the second driver, defendant Boydston, and the jury was not presented with confusing language where the emergency could be understood to be the initial incident which caused the first driver, the plaintiff, to suddenly stop. Thus, unlike in *Maresz* and *Webb,* in the case before us, we cannot conclude that the jury was not misled by the erroneous instruction which specifically stated that "[a]ll these duties of Defendant being subject however to this qualification that if immediately before the accident Plaintiff's automobile suddenly and unexpectedly came to a stop in front of Defendant's automobile, and if the *emergency presented* was not caused or

brought about by any failure by Defendant with his duties as above set forth" [emphasis added]. The language in this instruction is extremely confusing and places the emphasis on the qualification of Lansford's duty at the wrong point in time.

A correct comparative negligence instruction should have made no reference to an emergency and should have read similar to the following:

1. It was the duty of defendant in driving his automobile to exercise ordinary care for the safety of other persons using the highway, and this general duty included the following specific duties:

   (a) to keep a lookout ahead for other persons and vehicles in front of him or so near his intended line of travel as to be in danger of collision, and not to follow another vehicle more closely than was reasonable and prudent, having regard for the speed of the respective vehicles and for the traffic upon and condition of the highway;

   (b) to have his automobile under reasonable control;

   (c) to drive at a speed no greater than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway, and not exceeding 55 miles per hour;

   AND

   (d) to exercise ordinary care generally to avoid collision with other persons and vehicles on the highway, including the automobile of plaintiff.

   If you are satisfied from the evidence that defendant failed to perform one or more of these duties and that such fail-

---

13. *Webb,* 439 S.W.2d at 956.

14. *Id.* at 957.

15. *Id.*

ure was a substantial factor in causing the collision with plaintiff's automobile, you will find for plaintiff as to her claim against defendant.

2. It was the duty of plaintiff in the operation of her automobile to exercise ordinary care for the safety of other persons and vehicles using the highway, and this general duty included the following specific duties:

   (a) to keep a lookout ahead for other persons and vehicles in front of her or so near her intended line of travel as to be in danger of collision, and not to follow more closely than was reasonable and prudent, having regard for the speed of the respective vehicles and for the traffic upon and condition of the highway;

   (b) not to stop her automobile on the main-traveled portion of the highway unless it was reasonably necessary in order to avoid conflict with other traffic or pedestrians;

   (c) not to drive her automobile at such a slow speed as to impede or block the normal and reasonable movement of other traffic unless it was reasonably necessary for safe operation, having regard for the traffic and for the condition and use of the highway;

   AND

   (d) to exercise ordinary care generally to avoid collision with other persons and vehicles on the highway, including the automobiles of William Krieg and defendant.

If you have found for plaintiff on her claim against defendant under Instruction No. 1, and if you are further satisfied from the evidence that plaintiff failed to comply with one or more of these duties and that such failure was a substantial factor in causing the accident, you will determine from the evidence what percentage of the total fault was attributable to plaintiff and defendant.

Based upon the foregoing, the judgment of the Jefferson Circuit Court is affirmed in part and reversed in part, and this matter is remanded for a new trial consistent with this Opinion.

EMBERTON, Senior Judge, concurs.

COMBS, Chief Judge, dissents and files separate opinion.

COMBS, Chief Judge, dissenting.

I cannot agree that the instruction was erroneous. If indeed it could be so construed, then only harmless error was involved.

We are quibbling over semantics. The distinction between "sudden occurrence" and "sudden emergency" is essentially meaningless.

The issue of Lansford's negligence was properly a jury question, and I am persuaded that the jury was properly instructed. Consequently, I would affirm.