89 F.3d 832
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Maudie BENTLEY and Robert Bruce Bentley, Plaintiffs-Appellants,
Travelers Insurance Company, Intervening Plaintiff-Appellant,
v.
Gregory CLISSO and Willie Clisso, Defendants-Appellees,
Allstate Insurance Company, Intervening Defendant-Appellee.
 Nos. 94-6634, 95-5020.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1996.
 
 Before: MARTIN and MOORE, Circuit Judges; JOINER, District Judge.*
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 In this diversity case, Maudie Bentley and Robert Bruce Bentley appeal from the judgment of the district court following verdicts in favor of defendants, Gregory Clisso and Willie Clisso. The Bentleys take issue with the district court's jury instruction on negligence, its exclusion of one of their expert witnesses, and its admission of certain medical testimony by both plaintiffs' and defendants' experts. Finding no reversible error, we affirm.
 
 
 2
 * Gregory Clisso was driving his father's car along Highway 23 in Kentucky when he suddenly lost electrical power and control over the car. Despite his efforts to brake and steer, Clisso's car crossed the center line into oncoming traffic and struck the Bentleys' car at a curve in the road. Robert Bentley, who was driving, admitted that he did not see Clisso's car until after the impact and that he therefore did not slow down or try to steer away. It was later determined that Clisso's fan belt had broken, causing his car's electrical shutdown and consequent failure in its power steering and power brakes.
 
 
 3
 The Bentleys filed an action against Gregory Clisso and his father, Willie Clisso, in Kentucky state court, alleging negligent maintenance of the vehicle and negligent driving. The Clissos promptly removed the action based on diversity of citizenship, and the parties' insurance companies were included as intervening plaintiff and defendant. The parties then proceeded to discovery, for which the deadline was originally set at November 15, 1993. On March 7, 1994, the Bentleys moved for permission to make a late filing of discovery, including the addition of "accident reconstructionist" Roy Crawford as an expert witness. The motion was granted. The plaintiffs never filed a report from Crawford, however, which set forth the details of his expected testimony and which was required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Shortly before Crawford was set to testify, defendants moved to exclude his testimony. The district judge granted defendants' motion on the basis of plaintiffs' failure to comply with Rule 26.
 
 
 4
 Just before trial, the Bentleys objected to the admission of deposition testimony from both their and defendants' medical experts. Two physicians had testified that they believed Robert Bentley was "magnifying" or "exaggerating" his symptoms. Four other doctors gave opinions as to the general tendency of accident victims to prolong their recovery when involved in litigation. Plaintiffs argued that such testimony was more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. The district court disagreed and allowed the testimony to be considered by the jury.
 
 
 5
 At the conclusion of plaintiffs' evidence, the district court entered a judgment as a matter of law in favor of Willie Clisso on the negligent maintenance claim. On the negligent driving claim, plaintiffs objected that the jury instruction on "sudden emergency" was improper. Over plaintiffs' objection, the district court decided to include the instruction, which modified Gregory Clisso's duty not to cross the center line of the highway while driving. After enumerating the various duties of Gregory Clisso to exercise reasonable care in driving his car, the district court stated to the jury:
 
 
 6
 All of the duties being subject, however, to this qualification: That if, immediately before the accident, the defendant Gregory W. Clisso, experienced a sudden and unexpected mechanical breakdown to his vehicle that was not caused or brought about by any failure of Gregory W. Clisso, he was not, thereafter, required to adopt the best course possible in order to avoid the impending danger, but was required to exercise only such care as an ordinary, prudent person would exercise under the same conditions.
 
 
 7
 Jury Instruction No. 7. Plaintiffs argued that such instruction was not appropriate under the circumstances. Plaintiffs now argue also that even if such an instruction was appropriate, its language was misleading and should have been more carefully drafted.
 
 II
 
 8
 Plaintiffs' most meritorious contention is that the district court erred in giving the "sudden emergency" instruction. We review jury instructions "as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." Gafford v. General Electric Co., 997 F.2d 150, 166 (6th Cir.1993) (quoting Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72 (6th Cir.1990)). "Although state law controls the substantive content of jury instructions in diversity actions such as this, 'federal law governs our standard of review for determining whether a jury instruction is prejudicial.' " Id. (quoting Bagherzadeh v. Roeser, 825 F.2d 1000, 1003 (6th Cir.1987)).
 
 
 9
 In this case, the instruction was given in order to qualify the prior instruction that Gregory Clisso had the duty "[t]o operate the vehicle upon the right side of the highway whenever possible." In other words, the sudden emergency instruction was given so that the jury could account for Clisso's mechanical failure in their deliberations. Nevertheless, plaintiffs asserted at trial, and assert now, that the situation in this case still did not rise to the level of "sudden emergency." As a technical matter, they are correct. Although use of the sudden emergency instruction in this case parallels the use of the instruction in a leading Kentucky case, Harris v. Thompson, 497 S.W.2d 422 (Ky.1973), subsequent Kentucky decisions have clarified the circumstances under which such an instruction should be used. As noted in Mason v. Keltner, 854 S.W.2d 780, 783 (Ky.Ct.App.1992) (quoting Mitchell v. Mitchell, 428 S.W.2d 222, 224 (Ky.1968)) (emphasis omitted), the "appropriateness of a sudden emergency instruction rests upon the theory that the affected party was suddenly confronted with a choice between alternative courses of action." As further explained in City of Louisville v. Maresz, 835 S.W.2d 889, 892 n. 1 (Ky.Ct.App.1992), "In the law of negligence, sudden emergency developed from the choice of evils or of dangerous courses doctrine." Thus, the instruction is appropriate in cases where a defendant faces a sudden situation requiring instant decisionmaking and, "when presented with this sudden occurrence, cho[oses] a course of conduct which appeared at the time to have been the safest course, which now appears not to have been the best or wisest choice, and which resulted in injury." Id. at 893.[1]
 
 
 10
 In the instant case, however, the facts do not "present a sudden emergency, only a sudden occurrence." Id. In other words, Clisso simply had no choice as to how to act when his brakes and steering failed him. He essentially had no control over his car, and so the question of whether he exercised reasonable care after his electrical power died is not even a real issue. A sudden emergency instruction was not necessary because he had no opportunity to make a meaningful choice after the "sudden occurrence." To the extent the jury instruction regarding Clisso's duty to stay on the right side of the road was in need of modification, that instruction should simply have incorporated the facts of the sudden occurrence--in other words, it should have stated that Clisso's general duty to exercise ordinary care included the specific duty to drive on the right side of the highway, except to the extent the jury found that a sudden mechanical failure prevented him from doing so. This would have been preferable to the sudden emergency instruction, which was imported wholesale from cases involving a different type of circumstance--an emergency, rather than a simple "occurrence."
 
 
 11
 In accordance with Kentucky law, as set forth in City of Louisville v. Maresz, we hold that the district court gave an erroneous instruction. In accordance with Maresz, too, we hold that this was nonetheless harmless error. 835 S.W.2d at 894. There was no prejudice in instructing the jury that Clisso "only" had to exercise ordinary care after the sudden occurrence, if it was apparent that Clisso did not have any choice in acting at all. Again, we note that the standard of review for jury instructions is whether they, "as a whole," adequately informed the jury of the relevant considerations and provided enough of a legal basis for the jury to make its decision. Nothing in the instruction appeared to qualify any of Clisso's duties before the sudden occurrence; the instruction's "qualification" was only directed toward events occurring "thereafter." Jury Instruction No. 7. Consequently, the fact that the court instructed the jury as to an irrelevant consideration, without changing the defendant's general duty to exercise ordinary care, does not entitle plaintiffs to a retrial on the issue.
 
 III
 
 12
 The Bentleys' second argument is that the district court should not have applied amended Rule 26 to exclude their accident reconstruction expert, because the court's original discovery deadline was November 15, 1993, whereas the amendment to the rule did not go into effect until December 1, 1993. This claim lacks sincerity, because the Bentleys did not even try to include Roy Crawford as an official witness until March 7, 1994, when they moved for a late filing of discovery. Once the district court granted this motion, plaintiffs were obligated to provide a detailed report by Crawford at least 90 days prior to trial, see Fed.R.Civ.P. 26(a)(2)(C), because the amended rule was fully in effect by this time. It was plaintiffs' duty to keep up with changes to the federal rules, as such changes will be applied to pending cases to the fullest extent possible. See 146 F.R.D. 404 (April 22, 1993) (Order of the Supreme Court amending the Federal Rules of Civil Procedure). Plaintiffs' failure means that the district court properly excluded Crawford's testimony unless the absence of the expert's report was harmless. See Fed.R.Civ.P. 37(c)(1). In this case, the district court appropriately concluded that the failure to file a report was more harmful to defendants than helpful to plaintiffs--defendants had simply not been provided with any information regarding the substance of Crawford's testimony or the basis for his opinions. Moreover, the district court noted that the accident reconstructionist's contribution to the substance of plaintiffs' case would have been negligible at best.
 
 
 13
 Plaintiffs argue in the alternative that they provided the equivalent of a Rule 26(a)(2) report in a settlement-offer letter to the Clissos allegedly containing Crawford's name as a potential witness and the substance of his expected testimony. The Bentleys do not dispute, however, that the settlement letter did not even indicate that Crawford would testify as to the speed at which the curve on the roadway could be safely negotiated, and the Bentleys acknowledge that this was one of the main purposes of Crawford's testimony. Under Rule 26(a)(2)(B), the report must be prepared by the witness himself, and it must contain:
 
 
 14
 ... a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
 
 
 15
 There is no question that plaintiffs did not meet this requirement.
 
 IV
 
 16
 Finally, plaintiffs argue that it was an abuse of discretion to admit testimony regarding the exaggeration and prolonging of symptoms. Two physicians had testified that they examined Robert Bentley and found him to be "magnifying" his descriptions of his pain. They had stated that his complaints were inconsistent with their objective findings. In addition, these physicians and four others had testified as to the general tendency of accident victims to take longer to heal when involved in litigation. Although the Bentleys now challenge the admission of this testimony under Federal Rule of Evidence 403, the jury's verdict essentially forecloses any such argument. The jury found that Gregory Clisso was not liable for any of Robert Bentley's alleged injuries. Therefore, the challenged testimony regarding the extent of these injuries cannot provide a basis for reversal. To the extent that the testimony at issue might have had an adverse effect on Robert Bentley's credibility, too, we note that Bentley's testimony relating to the issue of liability--i.e., his version of events at the scene of the accident--was wholly undisputed. As a result, even if we were to find error in the admission of the physicians' testimony, we would necessarily hold that such error was harmless under Rule 61 of the Federal Rules of Civil Procedure. The testimony simply had no effect on the jury's conclusion that Clisso was not negligent.
 
 
 17
 The judgment is AFFIRMED.
 
 
 18
 JOINER, District Judge, concurring.
 
 
 19
 I agree that the jury instruction on sudden emergency does not constitute error requiring reversal. As an initial matter, I would conclude that the Bentleys' objection to the form of the instruction was waived under FED.R.CIV.P. 51 by their failure to renew this particular objection in court, after the jury was charged. Preferred RX, Inc. v. American Prescription Plan, 46 F.3d 535, 547 (6th Cir.1995); Woodbridge v. Dahlberg, 945 F.2d 1231, 1237 (6th Cir.1992). While this waiver does not preclude plain error review, no error would have been "plain" to the district court in light of the uncertainties of Kentucky law regarding the applicability of the sudden emergency doctrine in a case such as this. Finally, regarding the merits of the Bentleys' claim that the instruction prevented the jury from considering Clisso's alleged pre-emergency negligence in attempting to negotiate the curve at too high a speed, there was no probative evidence that Clisso was, in fact, negligent. Clisso testified that he was driving at a speed of 40 m.p.h., 15 miles below the speed limit. According to plaintiffs, their own expert would have testified, had he not been precluded from doing so by virtue of their failure to comply with FED.R.CIV.P. 26(a)(2)(B),[1] that the speed at which the curve could be safely negotiated was 40 m.p.h.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 One recent Kentucky Court of Appeals case also seems to suggest that a sudden emergency instruction should never be given, now that Kentucky has abolished contributory negligence in favor of comparative negligence. See Bass v. Williams, 839 S.W.2d 559, 562-63 (Ky.Ct.App.1992). Bass is probably an outlying decision on this point, however, since it both post-dates Maresz and pre-dates Mason, and since its reasoning is highly questionable. The court in Bass seemed to believe that because comparative negligence directly apportions liability to fault, and because a sudden emergency instruction diminishes the degree to which a defendant might be found to be at fault, the latter somehow invades the province of the former. In reality, the apportionment of liability to fault is not affected in any way by the instruction, because the instruction only affects the manner in which "fault" is defined in the first place
 
 
 [1]
 On this issue, I would add to Judge Moore's thoughtful discussion the fact that plaintiffs made no attempt to comply with their discovery obligations under the version of Rule 26 in effect prior to December 1, 1993. Had they supplemented their interrogatory answers as required by former Rule 26(e)(1), we would be confronted with a more compelling argument. Plaintiffs, however, made no attempt to comply with either version of Rule 26. The district court would have been justified in excluding their expert under former Rule 26(e)(1). Thibeault v. Square D Co., 960 F.2d 239, 245-47 (1st Cir.1992); Hines v. Joy Mfg. Co., 850 F.2d 1146, 1153 (6th Cir.1988)